FLORENT FELTZ *vs.* EDWARD S. WALKER AND WIFE.

*B* purchased certain land in Pennsylvania and had it conveyed by the vendor to his sister, the wife of *W*, for the purpose of preventing his wife taking dower in it. *W* and his wife did not know of the conveyance at the time, but afterwards at *B*'s request executed to him a bond payable to him and his assigns, and secured it by a mortgage back of the land conveyed. There was no consideration for the bond except the deed, and the bond and mortgage were executed solely for the purpose of enabling *B* to control the title. The bond was afterwards assigned by *B* for a valuable consideration to the plaintiff, who took it in good faith. The plaintiff before purchasing applied to *W*, who told him it

would be a good investment. In a suit brought by the plaintiff upon the bond it was held—

1. That the effect of the whole transaction was to create a trust in favor of B which he could enforce by means of the mortgage.

2. That B himself could not have maintained an action on the bond, but could have availed himself only of the mortgage.

3. That the plaintiff could take no better right than B had.

4. That the plaintiff could not avail himself of the fact that the land had been conveyed to the wife of W for the purpose of defrauding B's wife of her right of dower. If this rendered the conveyance fraudulent it would be void only as against B's wife.

5. That the defendants were not bound to save the plaintiff harmless by reason of their negligence in giving the bond. As it was understood that it was given only as security for B, they were not to be regarded as guilty of gross negligence in giving it, while the plaintiff himself was guilty of negligence in not inquiring into the facts.

6. But that, as W had stated to the plaintiff that his purchase of the bond would be a good investment, he was estopped from denying his liability upon it; while his wife, who was not bound by his acts, was not so estopped.

No contract, sealed or unsealed, is sufficient of itself, unaided by other facts, to cover and protect fraud; and rules of evidence which exclude parol proof when offered to affect written instruments, will generally give way and allow the fraud to be proved.

CIVIL ACTION on a bond; brought to the Superior Court in Fairfield County, and tried to the court before *San-ford, J.*

Upon the trial it appeared that Edwin L. Brady, the obligee of the bond, a short time before the 29th of May, 1871, had purchased a tract of land in the state of Pennsylvania, and had had it conveyed directly by the vendors to Amelia C. Walker, one of the defendants, who was his sister and the wife of the defendant Edward S. Walker. The defendants were then residing in Brooklyn in the state of New York and Brady in Jersey City in the state of New Jersey. The defendants had no knowledge of the conveyance until the bond and mortgage to be described were given.

On the 29th of May, 1871, the defendants were separately requested by Brady to go to Jersey City and execute certain papers, without his informing them what they were. They went there separately the same day and executed a joint bond to Brady for $3,250, payable in two years, with

yearly interest, to him, his executors, administrators and assigns. At the same time they executed a mortgage to him of the same land which he had had conveyed to Mrs. Walker, to secure the bond. At the time of the execution of the bond and mortgage Brady stated to them the fact of the conveyance to her, and that he had a divorce suit pending in Bridgeport in the state of Connecticut, and that he had taken the liberty to put the property in Mrs. Walker's name to prevent his wife from getting dower in it, and that he wanted the instruments executed to enable him to control the property until the divorce should be obtained; and that it was all right and would get her into no difficulty. The defendants executed the bond and mortgage solely for this purpose. The deed as between Brady and Mrs. Walker was without consideration and there was no consideration except the deed for the bond and mortgage.

Brady soon after, for the consideration of $2,710, assigned the bond and mortgage to the plaintiff, who took them in good faith, and guaranteed the payment of the amount due by the bond.

Mrs. Walker had no knowledge of the assignment until the bringing of the present suit, but before taking the assignment the plaintiff made inquiry of Mr. Walker, who advised him that it was a good investment. Mrs. Walker had no knowledge of this conversation.

The defendants claimed as matter of law upon these facts that there was no valuable consideration for the bond which would have entitled Brady to recover upon it, or use it otherwise than as a means of appropriating the mortgaged premises; that the bond in the hands of the plaintiff was subject to the same defenses that it would have been in Brady's hands; and that the attempt to enforce its collection out of the defendants operated as a fraud upon the defendants.

The court ruled adversely to these claims and rendered judgment for the plaintiff. The defendants moved for a new trial for error in this decision of the court.

*J. B. Curtis*, in support of the motion, contended—

1. That the transaction between Brady and the defendants merely created a trust in his favor in the land, to be enforced through the bond and mortgage, and that no action on the bond could have been maintained by him. 2. That the plaintiff as assignee could have no better rights than Brady had, an assignee of a non-negotiable instrument taking it subject to all equities. 3. That the fact that the instrument was under seal did not preclude the inquiry into the actual consideration and all the circumstances attending the transaction. 4. That the statement of Mr. Walker that the purchase would be a good investment had no reference to his own personal liability on the bond, but to the property being held by the mortgage and being of sufficient value to secure it, which might have been true at that time, however it may have proved since. 5. That the defendants had not been guilty of such gross negligence as to make them liable, as the arrangement with Brady was entirely lawful and reasonable and one from which they had no reason to suppose that any injury would come to third parties.

*E. W. Seymour* and *S. Fessenden*, contra, contended—

1. That the instrument being under seal its consideration could not be inquired into. 2. That the defendants in asking the aid of equitable principles did not come with clean hands, having joined with Brady in making the arrangement for the purpose of defrauding his wife of her right of dower, and to enable him to have the benefit of the property without appearing to be the owner of it. 3. That Mr. Walker was clearly estopped by his advising the plaintiff when about to pay the bond, and knowing that he sought the information for that purpose, that the purchase would be a good investment. 4. That both defendants had made themselves liable on the bond by their negligence and indiscretion in executing it and placing it in Brady's hands, where it might be used in such a way as to subject innocent persons to loss by purchasing it, it being a well settled rule that where one of two innocent purchasers must suffer by

the fraud of a third the loss must be borne by the party furnishing the means.

CARPENTER, J. Prior to May 29th, 1871, Edwin L. Brady, a brother of the defendant, Amelia C. Walker, purchased a piece of land in the state of Pennsylvania and had it conveyed directly from the grantors to Mrs. Walker. This was done as Brady alleged to prevent his wife from having dower in it. On the day above mentioned the defendants at Brady's request separately executed the bond in suit for the sum of $3,250, together with a mortgage securing the same of the property so conveyed to Mrs. Walker. Until then they had no knowledge of the deed. There was no consideration for the bond except the deed, and the bond and mortgage were executed solely for the purpose of enabling Brady to control the land and obtain the title thereto. Afterwards Brady for a valuable consideration assigned the bond and mortgage to the plaintiff, who took the same in good faith and without notice of any infirmity. At the date of the bond the defendants resided in New York, but the bond was executed in New Jersey.

The defendants claimed that Brady could maintain no suit on the bond except to appropriate the mortgaged premises in satisfaction of it; that the assignment gave the plaintiff no other or different rights than were possessed by Brady; and that the bond was subject both at law and in equity to all the defenses that existed against it before it was assigned. The court overruled these claims and rendered judgment against both defendants. The defendants moved for a new trial.

We think the law applicable to the case is as the defendants claimed.

The real question is not a question of consideration. There was no failure, as whatever consideration existed at the time the bond was executed existed at the time it was assigned. Nor was there an entire want of consideration. Brady purchased land, paid for it, and had the title conveyed to Mrs. Walker. From these facts the law raised a

resulting trust in favor of Brady. As a simple and adequate means of enforcing that trust the bond and mortgage were given and for that purpose might properly be used. To that extent there was a consideration, and to that extent the plaintiff had the benefit of his purchase, for he used the bond and mortgage to secure a title to and the control of the land.

The attempt is now made to compel the defendants to pay the amount named in the bond. The first question is, whether Brady himself could have done this. If he could it is obvious that it would operate as a fraud on the defendants. They were not indebted and they received nothing when the bond was executed. It was not designed or given as an evidence of debt, nor was it intended as a debt *per se.* The clear understanding of the parties was that it was not to be used for any such purpose. It is unfortunately true that written instruments are often used or attempted to be used as a means of perpetrating a fraud; it is equally true that there is no rule of law that deprives the court of the power to defeat the attempt whenever it is discovered. Fraud vitiates all contracts, written or verbal and sealed or unsealed. To this rule there is no exception as between the original parties. With equal reason no contract, whatever its form and however valid for other purposes, can lawfully be used for a fraudulent purpose. There is no contract sealed or unsealed that is sufficient of itself, unaided by other circumstances, to cover and protect fraud. And rules of evidence which exclude parol proof when offered to affect written instruments, will generally give way and allow the fraud to be proved. *Crocker* v. *Higgins,* 7 Conn., 342; *Collins* v. *Tillou,* 26 Conn., 375; *Dale* v. *Gear,* 38 Conn., 15. It is quite clear therefore that the defendants would have had a perfect defense to an action on this bond by Brady.

The next step in our inquiry is whether this defense is available to them in this action, brought by a *bonâ fide* purchaser for value and without notice.

The rule is that the assignee of a bond or other chose in

action not negotiable takes it subject to all the equities existing against it in the hands of the original obligee or payee. The rule is stated thus broadly and without qualification by text-writers and courts; and when properly understood as applying to cases where there is no fraud, gross negligence or misconduct by the maker or obligor, it is believed that the rule is without exception. The cases which are apparently exceptions will be found on examination to turn on fraud, negligence or misconduct in the maker. So far there seems to be little room for controversy.

But it is insisted that the defendants were parties to a fraud and therefore cannot make this defense.

It is conceded that the transaction between Brady and the defendants was designed to place the land beyond the reach of Brady's wife. Admitting it to be fraudulent it was fraudulent only as against Mrs. Brady. Brady himself could not plead the fraud in an action on this bond; and he transferred to his assignee no rights in this respect which he did not himself possess. The transaction was valid as between the parties and in respect to third persons generally. Mrs. Brady alone could avail herself of the fraud to avoid it. The plaintiff does not hold under her nor represent her. He succeeds to and holds under Brady, the principal party to the fraud. He therefore cannot set up the alleged fraud as an answer to this defense. The fraud does not affect the question of liability on this bond. We apprehend that the fraud to be available to rebut this defense must in some way operate to the prejudice of the assignee. How he was prejudiced by it does not appear.

But it is said that the defendants were negligent and indiscreet and thereby placed it in the power of Brady to defraud the plaintiff, and that therefore they ought not to be allowed to set up this defense.

We are not disposed to deny that gross negligence, or even a less degree of negligence, where it will naturally and probably result in injury to an assignee, may destroy this defense. But no such negligence is shown here. Mrs. Walker and her husband simply trusted her brother. It

does not appear that they had any reason to suppose that he would use or attempt to use the papers for any other purpose than that for which they were given. They were not bound to presume that he would attempt to defraud any one. Indiscreet they may have been, but no more so than is often the case when a party gives a note or other obligation for a different purpose than that indicated on its face. Such transactions are of frequent occurrence in business circles and are often convenient and even necessary. The policy of the law however is not to punish the parties by leaving them the unprotected victims of fraud, but rather to protect them by requiring purchasers to inform themselves of the real nature of the transaction or purchase at their peril. Thus, if the plaintiff has been defrauded it is more the result of his own imprudence than of the indiscretion of the defendants.

And this is an answer to another claim made by the plaintiff, that where one of two innocent persons must suffer, he who placed it in the power of a third person to do the wrong should bear the loss. This principle should not apply to a case like this, where the party invoking its aid suffers, if at all, through his own want of ordinary prudence.

There is one fact however in the case to which we have not yet alluded. It appears that the plaintiff before purchasing applied to Mr. Walker, who advised him that the purchase would be a good investment. The finding on this point is a little ambiguous. It does not distinctly appear what the plaintiff told Walker. If he was given to understand that the contemplated purchase had respect only to the land, and he believed that the land was worth as much or more than the purchase price, then we think it is quite clear that he ought not to be estopped from making this defense. If on the other hand he understood, as he may have done, and perhaps that is the fair import of the finding, that the plaintiff contemplated purchasing a pecuniary obligation against himself and wife, then we think he has precluded himself from making this defense. We are inclined to think that the latter is the better construction

of the motion, and that a new trial as to Mr. Walker must be denied.  He certainly had an opportunity to advise the plaintiff as to all the circumstances of the transaction, and having failed to do so he left the plaintiff to infer that it was a valid transaction against himself, and he must now be bound by it.

In respect to Mrs. Walker it is different.  She has not written, said nor done anything to deprive herself of this defense.  If the plaintiff had intended to hold her as well as her husband it was his duty to have inquired of her. Having failed to do so, we think she is entitled to a new trial, as the language and conduct of her husband do not bind her.

In this opinion the other judges concurred.