PACELLI BROTHERS TRANSPORTATION, INC., ET AL *v.*
TORINO PACELLI
(11187)

SPEZIALE, C. J., PETERS, PARSKEY, SHEA and GRILLO, JS.

Argued November 9, 1982—decision released March 1, 1983

*Richard L. Albrecht,* with whom, on the brief, was *William Weiss,* for the appellants-appellees (plaintiffs).

*Frank J. Silvestri, Jr.,* for the appellee-appellant (defendant).

SHEA, J. In this action the plaintiffs, consisting of three corporations bearing the family name "Pacelli," and two brothers, Clarence and Guido Pacelli, have sued a third brother, Torino Pacelli, for damages resulting from fraudulent misrepresentations claimed to have been made when they purchased his interests in the corporations. The defendant, Torino Pacelli, has filed a counterclaim based upon the refusal of the plaintiffs to pay the balance due on a promissory note given to him at the time of the purchase and also his share as a beneficiary in a profit sharing plan of one of the corporations. The trial court rendered judgment for the defendant on the complaint as well as on the counterclaim. In their appeal the plaintiffs claim that the

court erred (1) in finding that no fraudulent misrepresentation was proved which would justify an award of damages; (2) in concluding that a stipulated judgment and general release of all claims against the defendant included even those claims which had been concealed in violation of a fiduciary duty to disclose; (3) in allowing the defendant to recover upon his claim as the beneficiary of a profit sharing plan which had been the subject of a previous suit which terminated in a judgment of dismissal for failure to prosecute; and (4) in overruling the defense of the statute of limitations which the plaintiffs had raised against the promissory note. The defendant has filed a cross appeal for failure of the trial court to award reasonable attorney's fees for collection of the promissory note in accordance with a provision thereof. We find no error in the appeal of the plaintiffs. In the cross appeal we find error in the refusal to award attorney's fees.

The underlying facts as set forth in the memorandum of decision are not seriously challenged. In 1974 the three brothers, Clarence, Guido, and Torino Pacelli were equal stockholders in Pacelli Brothers Transportation, Inc., Pacelli Truck Rental, Inc., and Pacelli Petroleum Transporters, Inc., corporations engaged in different aspects of the trucking business. Their father had started the enterprise. Clarence, the eldest son, ran the business until about 1960, when Torino, the youngest, took over as manager. He became president of the principal corporation, Pacelli Brothers Transportation, Inc., which was organized in 1963. Clarence was treasurer, but was engaged principally in loading and unloading freight. Guido was secretary,

but he worked for another employer, and was not involved in the daily operation of the business. All three brothers were directors.

After Guido retired from his employment in 1972, he became more interested in the operation of the family trucking business. He became involved in a dispute with Torino. In late 1972[1] he engaged an attorney who arranged some meetings of the brothers, but was unsuccessful in achieving a reconciliation. Guido also retained an accountant to examine the corporate books. He suspected Torino of stealing, and Clarence eventually joined Guido in this belief.

Guido had learned of an account with a bank in Boston which was used as a depositary where customers of the business in the Boston area could conveniently pay freight charges which had been billed to them. These funds, which could be paid only to the depositor and were not available for drawing checks to other persons, were allowed to accumulate until Torino felt they were needed for the business. They would then be transferred to the corporation bank accounts in Connecticut. These funds were not reported as income to the corporation until they were deposited in the regular corporation bank accounts, a circumstance which gave rise to a potential liability for additional income taxes and penalties.

In the summer of 1974 Guido and Clarence decided to oust Torino as a director and president of the corporations. When Torino learned of this

---

[1] The memorandum of decision gives "1973" as the date when Guido retained counsel. His lawyer, however, testified that he wrote a letter in behalf of his client in December, 1972.

intention he brought an action against the three family corporations and his two brothers to enjoin the move, to have a receiver appointed and to dissolve the corporations. Guido, Clarence and one of the trucking corporations sued Torino, three of his sons employed by the corporation, and another trucking corporation, Pace Motor Lines, Inc., which was alleged to have been formed by Torino and his sons for the purpose of diverting the assets and customers of the Pacelli trucking business.

When the cases came to trial, there were extensive negotiations. The attorneys and accountants were aware of the possible tax liability arising from the failure to recognize the funds in the Boston depositary as income until they were withdrawn, but were not fully aware of its dimensions. The accountant who represented Guido and Clarence advised them against a settlement because they did not know enough about the operation of the corporations under Torino. A settlement nevertheless was reached, which, on October 2, 1974, was embodied in a stipulated judgment entered in the action which Torino had commenced. Guido testified that although he did not know the entire background and did not trust Torino, he wanted to get the whole thing over with.

Under the terms of the settlement, Clarence and Guido agreed to buy Torino's interest for $300,000, of which $87,000 would be paid in cash and $213,000 by a secured promissory interest-bearing note payable in semi-annual installments over a period of approximately five years. They also withdrew the suit against Torino, his sons and their corporation, and they gave Torino a general release. It was also

agreed that Torino's share of the profit sharing plan would become vested. Torino agreed not to compete in the franchise areas of the Pacelli corporations for five years.

About one year after the settlement it was discovered that during his management of the business Torino had secretly established another bank account, known as the Air-Freight account, which he had used not only for the needs of the business but also for himself and his family. The present action followed. The trial court found that Torino had diverted at least $103,410.02 of corporate funds to himself and that he had disregarded his "corporate duties of fidelity and honest dealing." Nevertheless, the court concluded that the effect of the stipulated judgment and general release could not be overcome by this evidence. It relied upon the admission of Guido that he had agreed to the settlement because he wanted to get the matter over with, even though he realized that he did not have full knowledge of Torino's dealings and was acting against the advice of his accountant. The subsequent tax liability related to the Boston bank depositary was found to have been foreseeable. The misappropriation of the funds in the Air-Freight account was held to be "something the plaintiffs have to take their chances on as they were well aware of such a possibility from their accountant and their knowledge of the background of the case." The court found that Torino had made no representations on the general subject and had never even discussed it. He had refused to talk with the plaintiffs' accountant who had been engaged in auditing the books of the enterprise for several months before the settlement.

# I

The conclusion of the trial court that Torino made no affirmative or express misrepresentation at the time of the settlement agreement is adequately supported by the evidence. The intentional withholding of information for the purpose of inducing action has been regarded, however, as equivalent to a fraudulent misrepresentation. 1 Restatement (Second), Contracts § 161; *Haddad* v. *Clark,* 132 Conn. 229, 233, 43 A.2d 221 (1945); see *Duksa* v. *Middletown,* 173 Conn. 124, 127–28, 376 A.2d 1099 (1977); *Ceferatti* v. *Boisvert,* 137 Conn. 280, 283, 77 A.2d 82 (1950). The subordinate facts found relating to his clandestine misappropriation of corporate funds clearly indicate a flagrant breach of Torino's duties as an officer and director of the family corporations. "Thou shall not steal" is basic. Not only the theft, but also his failure to disclose it were violations of the trust imposed upon him in that capacity. "An officer and director occupies a fiduciary relationship to the corporation and its stockholders." *Katz Corporation* v. *T. H. Canty & Co.,* 168 Conn. 201, 207, 362 A.2d 975 (1975). "He occupies a position of the highest trust and therefore he is bound to use the utmost good faith and fair dealing in all his relationships with the corporation." Id. " 'Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior.' " *Adams* v. *Williamson,* 150 Conn. 105, 112, 186 A.2d 157 (1962), quoting *Meinhard* v. *Salmon,* 249 N.Y. 458, 464, 164 N.E. 545 (1928). It is essential to the validity of a contract between a fiduciary and a beneficiary concerning matters within the scope of that relationship that a full disclosure be made of all relevant facts which the

fiduciary knows or should know. 1 Restatement (Second), Contracts § 173; see *Phillips* v. *Moeller,* 148 Conn. 361, 371, 170 A.2d 897 (1961). We are not inclined to relax these high standards which the law demands of fiduciaries. *Arrigoni* v. *Adorno,* 129 Conn. 673, 679, 31 A.2d 32 (1943).

Although Torino's relationship to his brothers as a fiduciary in whom they reposed confidence had ceased by the time the settlement agreement was made on October 2, 1974, we are not persuaded that his duty of disclosure had also terminated at that time. He could not doff his obligations so readily. He was bound to reveal his defalcations before he could be absolved. The trial court found that the rashness of the plaintiffs in entering the settlement agreement against the advice of their accountant when they suspected the possibility of undiscovered misdeeds of Torino barred them from relief. Where a party realizes he has only limited information upon the subject of a contract, but treats that knowledge as sufficient in making the contract he is deemed to have assumed the risk of a mistake. 1 Restatement (Second), Contracts § 154. We find this principle inapplicable to the circumstances of the Air-Freight account misappropriation. There is no evidence that Guido or Clarence had any idea that Torino had diverted to his own use in an entirely separate and concealed account a sum of the magnitude found by the court. "It is the duty of a director in such dealings with a corporation to made [sic] a full and frank disclosure. 1 Mechem, Agency (2d Ed.), § 1207. The extent to which that will be affected by the failure of the party adversely interested to pursue inquiries seems very limited." *Arrigoni* v. *Adorno,* supra, 679; see *White* v. *Miller,* 111 Conn. 53, 57, 149 A. 237 (1930). The plaintiffs

were entitled to assume that the books of the corporations, which were under the control of Torino, correctly stated the financial status of the business. General Statutes § 33-307(a). Despite their suspicion of Torino, they could also rely upon the fulfillment of his legal duty as a fiduciary to make a full disclosure. Where there is misrepresentation, the fault of the victim in failing to discover the truth does not preclude relief unless it is so extreme as to amount to a failure to act in good faith and in accordance with reasonable standards of fair dealing. 1 Restatement (Second), Contracts § 172. The misjudgment of Guido and Clarence did not rise to such a level.

Our conclusion that a settlement agreement and general release cannot shield an officer or director who has failed in his fiduciary duty to disclose information relevant to a transaction with those whose confidence he has abused is in accordance with the results reached in similar cases. See *Irving Trust Co.* v. *Deutsch,* 73 F.2d 121, 126 (2d Cir. 1934); *Sher* v. *Sandler,* 325 Mass. 348, 354, 90 N.E.2d 536 (1950); *Greenan* v. *Ernst,* 393 Pa. 321, 323–24, 143 A.2d 32 (1958).

## II

"Fraud vitiates all contracts, written or verbal and sealed or unsealed." *Feltz* v. *Walker,* 49 Conn. 93, 98 (1881). This principle is certainly applicable to the stipulated judgment and general release relied upon by the defendant in this case. The plaintiffs, however, at the time of trial did not seek a rescission of the settlement agreement by which they had acquired Torino's interest in the family trucking business, but sought to recover damages for the Air-Freight account misappropriation and

the tax liability resulting from the Boston depositary account.[2] They wished not only to retain the benefit of the bargain made, but also to improve upon it by an award of damages.

The distinction between fraud in the form of an express misrepresentation and in the form of nondisclosure becomes significant where a damage award rather than avoidance of the contract is the remedy sought. Although a cause of action sounding in fraud was cognizable both at law and in equity, courts exercising equitable jurisdiction broadened the legal conception of fraud as an affirmative misrepresentation to include more subtle guises, such as nondisclosure. 37 Am. Jur. 2d, Fraud and Deceit § 326. "That there may be a fraud in the view of a court of equity, which is not so at law, has long since been declared." *Broome* v. *Beers,* 6 Conn. 198, 211 (1826). "Fraud, indeed, as known to equity jurisprudence, 'properly includes all acts, omissions and concealments, by which an undue and unconscientious advantage is taken of another. . . . ' " (Citation omitted.) *Story* v. *Norwich & Worcester R. Co.,* 24 Conn. 94, 113–14 (1855).

Since the plaintiffs have elected to seek damages rather than rescission, they bear the burden of proving the amount of the diminution in the value of their bargain which was suffered because of the nondisclosure. See *Johnson* v. *Flammia,* 169 Conn. 491, 500, 363 A.2d 1048 (1975); *Paiva* v. *Vanech Heights Construction Co.,* 159 Conn. 512, 517, 271 A.2d 69 (1970). The essence of their claim is that a

---

[2] Although the original complaint included a claim for rescission, the plaintiffs withdrew this claim in a trial brief dated September 23, 1980.

full disclosure of the Air-Freight misappropriation would have resulted in a settlement agreement giving them an additional sum equal to their share of the amount taken by Torino. The insurmountable difficulty with this position of the plaintiffs is that we cannot assume that Torino would have agreed to accept the same consideration as provided in the settlement agreement. It is fair to assume that his decision to accept the terms of the settlement and transfer his interest was influenced in some measure by an expectation that his theft would remain undiscovered and that he would continue to enjoy its benefits. We cannot speculate about what different terms might have been agreed upon if there had been full disclosure. The settlement was indivisible, and the plaintiffs cannot avoid its detriments without relinquishing its benefits. See D. Dobbs, Remedies (1st Ed.) § 9.4, p. 620. Their decision to retain the fruits of the bargain precludes them from any relief.

### III

Prior to the commencement of the present action by the plaintiffs in June, 1976, the defendant, in December, 1978, sued the plaintiffs for failure to comply with the part of the settlement agreement relating to his interest in the profit sharing plan. This writ was dismissed on April 16, 1977, for failure to prosecute with reasonable diligence. See Practice Book § 251. The same claim was raised when the defendant filed his counterclaim in this action on August 8, 1980. The plaintiffs pleaded the dismissal as a defense to this portion of the counterclaim.

As the plaintiffs concede, the judgment of dismissal for lack of diligence was not an adjudication

on the merits and could not be treated as res judicata. *Bridgeport Hydraulic Co.* v. *Pearson*, 139 Conn. 186, 196, 91 A.2d 778 (1952). They claim, however, that upon dismissal the applicable statute of limitations became General Statutes § 52-592,[3] which allows commencement of a new action within one year after the original action has been defeated without a trial on the merits. Since the counterclaim was not filed until more than three years after the first action was dismissed, the plaintiffs maintain that this portion of the counterclaim is barred.

This court in a similar situation explicitly has rejected the argument of the plaintiffs that § 52-592 supersedes other statutes of limitations. *Ross Realty Corporation* v. *Surkis*, 163 Conn. 388, 392–93, 311 A.2d 74 (1972). "There is nothing contained in the statute to indicate that the legislature intended to abridge the applicable Statute of Limitations." Id., 393.[4] The trial court ruled correctly that § 52-592 did not bar this counterclaim.

---

[3] General Statutes § 52-592 provides in part: "ACCIDENTAL FAILURE OF SUIT; ALLOWANCE OF NEW ACTION. If any action, commenced within the time limited by law, has failed one or more times to be tried on its merits because of insufficient service or return of the writ due to unavoidable accident or the default or neglect of the officer to whom it was committed, or because the action has been dismissed for want of jurisdiction, or the action has been otherwise avoided or defeated by the death of a party or for any matter of form; or if, in any such action after a verdict for the plaintiff, the judgment has been set aside, or if a judgment of nonsuit has been rendered or a judgment for the plaintiff reversed, the plaintiff, or, if the plaintiff is dead and the action by law survives, his executor or administrator, may commence a new action for the same cause at any time within one year after the determination of the original action or after the reversal of the judgment."

[4] The plaintiffs have not claimed that any other statute of limitations would bar the counterclaim upon the settlement agreement. The counterclaim alleged an oral stipulation upon which a judgment was entered. The counterclaim was filed within six years of the date

## IV

The plaintiffs have raised a statute of limitations defense also against the counterclaim upon the note given to Torino as part of the consideration for the purchase of his interest in the family corporations. The plaintiffs rely upon General Statutes § 52-588 which provides that "[n]o action shall be brought on a negotiable note, if the holder thereof has been notified in writing by the maker thereof, or his attorney or agent, that such note was obtained of the maker in pursuance of a conspiracy, or of a general intent to defraud, unless the same is brought within one year after such notice was given, or six months after such note became due . . . ." The only notice which the plaintiffs claim to have given which would entitle them to invoke this statute of limitations is an allegation in a paragraph of the complaint served upon the defendants that "had full disclosure . . . and . . . no misrepresentations been made . . . the plaintiffs would not have accepted the agreement of October 2, 1974 and would not have executed the note and mortgages referred to in that agreement." If this allegation were deemed to constitute the notice prescribed by § 52-588, it is not disputed that the periods allowed by the statute for commencing an action upon the note had expired by the time the defendant filed his counterclaim or notified the plaintiffs of his intention to do so. For the purpose of the statute of limitations, an action upon the subject of a counterclaim is deemed to

of the settlement agreement and, therefore, would not have been barred by General Statutes § 52-576 (six years). It appears from the allegation that judgment had entered that the defendant might, in any event, have claimed that General Statutes § 52-598 (twenty-five years) would have been applicable.

have begun when it is filed or, where permission to do so is necessary, when a proper motion for that purpose is served on the opposing party. *Consolidated Motor Lines, Inc.* v. *M & M Transportation Co.,* 128 Conn. 107, 108–109, 20 A.2d 621 (1941).

Where a party seeks the benefit of a statute requiring a prescribed form of notice to trigger its operation, we have insisted upon strict compliance with the statutory requirement. See *Menzies* v. *Fisher,* 165 Conn. 338, 345–46, 334 A.2d 452 (1973); *Akin* v. *Norwalk,* 163 Conn. 68, 73–74, 301 A.2d 258 (1972); *Main* v. *North Stonington,* 127 Conn. 711, 712–13, 16 A.2d 356 (1940). In the absence of some special provision, the commencement of suit does not satisfy a statutory notice requirement. *Forbes* v. *Suffield,* 81 Conn. 274, 275, 70 A. 1023 (1908); see *Andrews* v. *Bristol,* 120 Conn. 499, 500–501, 181 A. 624 (1935). The allegations of the complaint relied upon by the plaintiffs make no reference to the "pursuance of a conspiracy, or of a general intent to defraud" as prescribed by the statute, nor does it contain any other language sufficient to inform a reasonable person that the provisions of § 52-588 were to become operative. The purpose of the statute undoubtedly is to allow the maker of a note who claims fraud in its procurement to seek a prompt determination of the issue while memories are fresh and witnesses are available. This objective was achievable in this case once the plaintiffs began their suit, in which they relied upon fraudulent nondisclosure as the basis for their damage claim. They hoped to overcome the effect of the stipulated judgment which settled the prior litigation and pursuant to which the note was executed. Their complaint placed the issue of the validity of the note before the court without any counterclaim

by the defendant. That issue was inextricably entwined in the controversy over the entire settlement. Under the circumstances the defendant was not obliged to view the complaint as a notice intended to invoke the limitation periods of § 52-588. The trial court correctly overruled this special defense.

## V

The only issue raised in the cross appeal of the defendant is whether the trial court erred in refusing to award attorney's fees for the collection of the note described in the counterclaim. The note contained a provision obligating the makers, in the event of default and the employment of an attorney to collect the note or to protect the mortgage securing it, to pay "a reasonable sum for attorney's fees." The court expressly denied the request for attorney's fees but gave no reason for such action.

The plaintiffs speculate that the refusal to award attorney's fees resulted from the trial court's view that Torino had acted in an "abhorent, irresponsible and dishonest manner toward his brothers." We know of no principle whereby the amount due upon a note which has been found to be valid may be reduced because of conduct of the holder which has been found to be reprehensible but not violative of the legal rights of the maker. The provision for a reasonable attorney's fee was an integral part of the note and, like any other clause determining the amount due, could not be disregarded. Having decided that the note was valid, the court had no choice but to allow a reasonable attorney's fee as part of the debt. The plaintiffs do not question the sufficiency of the evidentiary basis for determining the amount of such an award.

The defendant seeks to have us modify the judgment to include the amount of the attorney's fee and disbursements claimed at trial, but we cannot assume the role of trier of the facts. Additional proceedings in the trial court are necessary for this purpose.

There is no error in the appeal.

There is error in the cross appeal and the case is remanded for further proceedings to determine the amount of a proper allowance for attorney's fees and necessary disbursements in collecting the note.

In this opinion the other judges concurred.