[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This litigation arises by way of an amended complaint, formulated in three counts.
In the first count, the plaintiff alleges that she and the defendant, her former husband, entered into a separation agreement, and that pursuant thereto Article 4.1 provided follows:
 "The husband agrees that he will use his best efforts to cause the sale of the stock of said corporation at the earliest practicable date and upon the best possible terms and conditions. . . ."
CT Page 1586
The plaintiff claims that the defendant has breached the express terms of Article 4.1 of the aforementioned separation agreement as he has not used his "best efforts to cause a sale of the stock of said corporation. . . ."
The second count is in a large measure a reiteration of the six paragraphs of the first count, but the plaintiff goes on to spell out in greater detail how the defendant, owing a fiduciary duty to the plaintiff, failed to use his best efforts to cause a sale of the stock in a closely held corporation in which each of them owned eighteen percent of the shares in Donlevy's, Inc. the corporation which is at the root of this lawsuit.
The plaintiff claims that she is now compelled to suffer monetary damage because the defendant failed to use due diligence in selling the shares of stock at the earliest opportunity, and that he otherwise failed to properly monitor the condition of the corporation as well as the economic conditions at the time; and also that he failed to inform her of the status of the corporation.
The third count which embraces the Racketeering Influence and Corrupt Organization Act, and more commonly referred to as "RICO" became a part of the complaint and of this litigation by virtue of an amendment requested by the plaintiff, and allowed by the court, over objection by the defendant, on September 11, 1990. This action was instituted in October of 1987. The Separation Agreement was dated December 28, 1984.
This count reiterates paragraphs 1-4 of the first count, and goes on to allege that the defendant purposefully defrauded the plaintiff by breaching his fiduciary duty due her by mismanaging the company, by not using his best efforts to "sell the corporation" despite the existence of viable offers to purchase, and by not communicating the offers to the plaintiff.
The plaintiff also asserts that the defendant developed a scheme to defraud the plaintiff by utilization of the U.S. mails and interstate telephone wires in violation of 1 8 U.S.C. § 1341, and 1343 in that he corresponded and communicated with potential purchasers, existing and former employees of the corporation, with agents of the corporation and with others in ways which defrauded the plaintiff.
The defendant's answer admits the first four paragraphs of each of the plaintiff's three counts, and denies the remaining paragraphs of counts one, two and three.
The defendant has appended to his answer special defenses CT Page 1587 which are directed to all counts of the amended complaint.
Essentially, the defendant asserts in his special defenses, that the plaintiff was a director of the company in 1985 and 1986 and as such participated in the removal of the defendant as a director and operating head of the corporation.
He goes on to say that during those years, the plaintiff, as a corporate director participated in the operation of the company, causing it to become unprofitable and making it impossible to sell advantageously.
The defendant alleges that the corporation became unprofitable and bankrupt about thirteen months after the plaintiff and his fellow directors removed the defendant as a director, officer, and operating head of Donlevy's, Inc.
The defendant asserts that any damages which occurred to the plaintiff were self-inflicted by her as a director and operator of the company.
Succinctly stated, the facts would appear to be as follows:
Donlevy's Inc. was a closely held Massachusetts corporation organized in 1972 to sell discounted women's clothing. The company consisted of approximately fifty-four stores throughout the Eastern United States, when in December of 1987 it petitioned for bankruptcy under Chapter 11 of the Bankruptcy Code. The defendant, Donald Levy assumed the position of President and Chief Executive Officer. Mrs. Levy assumed the position of a director along with others. The stock in the company was divided eighteen percent each to the defendant Donald Levy, Mrs. Levy and their three children, and the remainder to directors Smith and Stoneman.
The plaintiff Barbara Levy and the defendant Donald Levy have been married since 1956. On August 31, 1985, their marriage was dissolved. As part of the dissolution action, the parties executed a Separation Agreement on December 28, 1984.
Plaintiff contends in this matter that because of the defendant's actions and in actions taken between December 28, 1984 and October 22, 1986, the date that defendant Donald Levy resigned as President and CEO of Donlevy's Inc., he violated Article 4.1 of the Separation Agreement in ways in which he breached the Agreement itself, and in ways in which he also violated his fiduciary duty towards her, as well as the Racketeering Influence Corrupt Organizations Act, 18 U.S.C. § 1342
and 1343 (RICO). CT Page 1588
The plaintiff requests that this court sustain her claim and grant her monetary relief.
The defendant asserts that he had not breached 4.1 of the separation agreement by not using his "best efforts" to cause sale of Donlevy's Inc. stock at the earliest practicable date and upon the best possible terms and conditions.
He claims further that he monitored the condition of the corporation with respect to the economy and certainly exercised reasonable diligence in using his best efforts to cause a sale of the stock in full compliance with the terms of the separation agreement.
The defendant claims also that he was not shown to have developed a racketeering scheme within the purview of the provisions of the "RICO" statute.
The first count of the amended complaint charges that the defendant had not used his "best efforts" to cause the sale of corporate stock in breach of the express terms of the separation agreement.
Testimony which was elicited at trial reflects that the best possible price of the business could only be obtained if two consecutive profit years were established. Defendant's Exhibit #7 reflects a new profit of $875,241.00 for fiscal year ending July 27, 1985.
Defendant's Exhibit 2 reflects a new loss of $137,366.00 for the fiscal year ending July 26, 1986.
The above Exhibits show that the Company did not receive two consecutive profit years.
Further testimony was elicited at trial, which showed that sometime in the spring of 1986 the defendants investment partners directed him to immediately put the company up for sale and further directed the defendant to use Financo, Inc. as an agent for the company, which agent would act as a finder attempting to arrange the acquisition of the company on terms acceptable to the company. See Defendant's Exhibits 8 and 9.
The Financo, Inc. contract, for its services, was not delivered until October 21, 1986. (Defendant's Exhibit 9). The defendant resigned on October 22, 1986 as president and CEO of Donlevy's Inc.
The court would hold that there is not adequate acceptable testimony that the defendant did not in act use his "best CT Page 1589 efforts" to bring about the sale of the company stock. Therefore, the defendant has not breached the express terms of Article 4.1, as alleged in the first count.
Although this holding would appear to be dispositive of the issue raised in this count, the court is constrained to make an added comment as it relates to the use of the expression "best efforts" in a factual situation as we have here. The expression is commonly used in agreements as we have here to the, point of becoming true, if not in fact "boiler-plate".
A clinical or close examination of the expression "best efforts" would mean to this court that the defendant was charged with the responsibility of using his and his alone, "best efforts". Not any more, and not any less.
It would appear to the court that the term as used here is entirely subjective in character.
Who is there to say, in the absence of direct testimony to the contrary, that the defendant was in fact physically or mentally capable of producing "best efforts" above and beyond what he demonstrated?
As related to the allegations of Count 2, it is fundamental to our law that an officer and director occupies a fiduciary relationship to the corporation and its stockholders. He occupies a position of the highest trust and therefore he is bound to use the utmost good faith and fair dealing in all of his relationships with the corporation. Pacelli Bros. Trans. Co. v. Pacelli, 189 Conn. 401, 407 (1983).
 "Proof of a fiduciary relationship therefore imposes a twofold burden upon the fiduciary. Once `a (fiduciary) relationship is found to exist, the burden of proving fair dealing properly shifts to the fiduciary. . . .' Furthermore, the standard of proof for establishing fair dealing is not the ordinary standard of fair preponderance of the evidence, but requires proof either by clear and convincing evidence, clear and satisfactory evidence or clear, convincing and unequivocal evidence." Dunham v. Dunham, 204 Conn. 303, 322-23 (1987).
Article 4.1 of the parties Separation Agreement (Plaintiff's Exhibit A), provides in relevant part that:
 The Husband agrees that he will use his best efforts to cause a sale of the stock of said CT Page 1590 corporation at the earliest practicable date and upon the best possible terms and conditions, but in no event shall the wife be required to join in such sale unless the net proceeds to her of the sale of her shares shall be less than the sum of $1,500,000.00 before payment by her all of income tax (both State and Federal) applicable to such transaction.
Article 4.2 of the parties Separation Agreement (Plaintiff's Exhibit A), provides that:
 tax (both State and Federal) applicable to such transaction.
Article 4.2 of the parties Separation Agreement (Plaintiff's Exhibit A), provides that:
 The Husband agrees to pursue such sale with reasonable diligence with a view towards the then condition of the corporation and the economy and to keep the wife fully informed as to the status thereof at all times.
Testimony which was elicited at trial reflects that the best possible price of the business could only be obtained if two consecutive profit years were established. Defendant's Exhibit 7 reflects a net profit of $875,241.00 for fiscal year ending July 27, 1985. Defendant's Exhibit 2 reflects a loss of $137,366.00 for fiscal year ending July 26, 1986.
Further testimony was elicited at trial, which showed that sometime in the spring of 1986 the defendant's investment partners directed him to immediately put the company up for sale and further directed the defendant to use Financo, Inc. as an agent for the Company, which agent would act as a finder attempting to arrange the acquisition of the Company on terms acceptable to the Company. See Defendant's Exhibits 8 and 9.
The Financo, Inc. contract for its services was not delivered until October 21, 1986. (Defendant's Exhibit 9). The defendant resigned on October 22, 1986 as President and CEO of Donlevy's Inc.
The evidence would and does establish that the defendant used his best efforts to incur a profit for two consecutive years, prior to the hoped-for sale of the company.
The court would note with some measured interest and concern, that neither of the remaining shareholders and or the CT Page 1591 directors of the corporation became parties to this lawsuit. Nor did any of them appear in court to corroborate in any degree the claims of the plaintiff. The absence of any testimony from any of them would appear to be significant.
The court holds that the evidence does not reflect that the defendant did not use good faith and fair dealing in all of his relationships with the corporation. (Pacelli Bros,189 Conn. at 407).
Accordingly, the court holds that the defendant did not breach Article 4.1 of the Separation Agreement, as alleged in Count 2 of the complaint.
The third, and remaining issue as raised by the allegations of the complaint, is whether the defendant has violated the provisions of the Federal "RICO" Statute, 18 U.S.C. Paragraphs 1341 and 1343.
The plaintiff alleges in Count three of her complaint filed on December 22, 1989 that defendant developed a scheme to defraud plaintiff by utilization of the United States mails and interstate telephone wires in violation of 18 U.S.C. § 1341 and1343 in that defendant corresponded and communicated with both potential purchasers of the corporation in ways which defrauded plaintiff by causing the value and the assets of the corporation to be diminished.
The defendant contends that there is no evidence of any predicate acts which, under the statute, would satisfy the statutory definitions of racketeering activity. Therefore, defendant claims that since no such evidence was shown, there is no "RICO" violation and plaintiff has no cause of action against defendant pursuant to "RICO" See, Seclima v. Imrex Co.,473 U.S. 479 (1985) for the proposition that the primary purpose of the "RICO" statute is to provide an additional tool to combat organized crime. (Defendant's brief p. 11).
The court holds that there is nothing in the record, by way of properly acceptable testimony or evidence to support the allegations of the third count as related to the establishment of a pattern of racketeering activity within the purview of the aforementioned "RICO" statutes, i.e. 18 U.S.C. § 1961.
The defendant, although not included in the basic pleadings of this case, has, in his brief requested reimbursement for attorneys' fees and costs of defense in the sum of $25,000.00.
"The general rule of law known as the `American rule' is that attorney's fees and ordinary expenses and burdens of CT Page 1592 litigation are not allowed to the successful party absent a contractual or statutory exception. . . . This rule is generally followed throughout the country. . . . Connecticut adhers to the American Rule. . . . the only exceptions are a specific contractual term; . . . or a statute." Marsh, Day Calhoun v. Solomon, 204 Conn. 639, 652-653 (1987). (citations omitted).
Article XX of the Separation Agreement entitled Fees and Costs in event of default provides that;
 [i]n the event that it shall be determined by a court of competent jurisdiction that either party shall have breached any of the Agreements herein, contained, the offending party shall pay to the other party reasonable attorneys' fees, court costs, and other expenses incurred in the enforcement of the provisions of this Agreement. . . .
In this action, the plaintiff seeks to fasten upon the defendant a breach of the separation agreement, as it relates to the aforementioned paragraphs dealing with his "best efforts", and breach of fiduciary duty to the plaintiff, as well as a "RICO" violation.
In view of the holdings of this court with regard thereto, it would appear that there is no evidence of a specific contractual term, written or otherwise, that warrants the awarding of attorneys' fees or costs to the defendant in this instance. Nor is there any statutory exception which provides for attorneys' fees and costs in this instance . Accordingly, this request on behalf of the defendant is denied.
Judgment may enter for the defendant on the complaint.
MILTON J. HERMAN State Trial Referee