[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE MOTIONS FOR SUMMARY JUDGMENT, #s 181 AND 184 
This memorandum of decision addresses cross motions for summary judgment filed by the plaintiffs and defendant. The plaintiffs' three-count second amended complaint dated May 17, 2000, alleges that the defendant made fraudulent misrepresentations inducing them to purchase her former residence. The first two counts allege fraud and theft in connection with those misrepresentations. The third count, for breach of contract, claims that the defendant failed to complete repairs she agreed to undertake as part of the sale. The defendants have filed an answer and special defenses of waiver and accord and satisfaction. Each party has now moved for summary judgment. For the reasons stated below, the court grants the defendant's motion as to a portion of the first and second counts and as to the third count of the complaint and otherwise denies both motions on all remaining counts.
A court will grant summary judgment if, viewing the evidence in the light most favorable to the non-moving party; Elliot v. Waterbury,245 Conn. 385, 391, 715 A.2d 27 (1998); there is no genuine issue of material fact and the moving party would be entitled to a directed verdict on those facts. Batick v. Seymour, 186 Conn. 632, 647, 443 A.2d 471
(1982). A material fact is one that will make difference in the result of the case. Hammer v. Lumberman's Mutual Casualty Co., 214 Conn. 573, 578,573 A.2d 699 (1990). The moving party has the burden of demonstrating the absence of any genuine issue of material fact. Gupta v. New BritainGeneral Hospital, 239 Conn. 574, 582, 687 A.2d 111 (1996). "[A] party CT Page 263 opposing summary judgment [, however,] must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . .Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]." (Citations omitted; internal quotation marks omitted.) Water Way Properties v.Colt's Manufacturing Co., Inc., 230 Conn. 660, 664-65, 646 A.2d 143
(1994). Summary judgment shall be rendered forthwith "if the pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 17-49.
 I — Factual Background 
The complaint in this matter alleges that the defendant owned a single-family, home in Deep River, Connecticut (the "premises"). The first count of the complaint sounding in common-law fraud alleges that, in offering the house for sale, the defendant signed a disclosure report making certain express representations as to its condition on which the plaintiffs relied when they entered into a contract to buy the premises. The complaint further alleges that certain of those representations were false and made with the intent to mislead the plaintiffs, that various conditions of the house were defective, and that the plaintiffs did not learn of the defective conditions or falseness of the representations until just before or after the closing. Relying on the same facts, the second count alleges that the defendant's receipt of monies from the plaintiff based on these misrepresentations constitutes theft under General Statutes § 52-564. The third count, for breach of contract, alleges that the defendant failed to make certain repairs prior to closing that she had promised to make. The defendant has denied the allegations of intentional misrepresentation, theft, or breach of contract and filed special defenses asserting waiver and accord and satisfaction.
 II — Defendant's Motion for Summary Judgment 
The defendant has moved for summary judgment on the first two counts on the grounds that an essential element of the torts of fraudulent misrepresentation and theft is that the plaintiff reasonably relied on the misrepresentations allegedly made by the defendant. The claimed misrepresentations were made on the Residential Property Condition Disclosure Report, required under Public Acts, No. 95-311, § 1, on which the plaintiff checked the "no" box for question 20 ("FLOOR problems? Explain.") and for question 25 ("TERMITE / INSECT / RODENT / PEST INFESTATION problems. Explain.") In fact, the defendant's property CT Page 264 had been treated for termite problems in 1991 and again a year later; and some of the parquet wood floors in the house buckled during moist or humid weather. The second amended complaint also alleges that the certain floor tiles in the "great room" of the house were loose or missing. The plaintiffs claim that they did not learn about the floor problems until two days before the closing, when, they assert, it was too late to back out of the closing without substantial loss to themselves. After the plaintiffs bought the house and moved in, they discovered termite problems inside the house.
The defendant urges as the basis for her motion that the plaintiffs hired an individual to do a home inspection and prepare a written report of his inspection. The defendant asserts that as a matter of law the plaintiffs cannot be regarded as having relied on any misrepresentations she may have made since they conducted and relied on their own independent investigation. Both parties have cited and discussed in their briefs various cases and authorities on the law of fraudulent misrepresentation and the effect of an independent investigation by a buyer.[1] None of the cases cited, however, fit the facts of this particular case.
Here, the documents submitted by the parties on summary judgment show that the home inspection report revealed evidence of termite tunnel mud tubes in the right rear well system crawl area under the front exterior stairs and of termite damage in a scrap block to the left side of the exterior front stairs. (Tiger Home Inspection report, page two, and field notes.) Excerpts from a deposition taken of Joe DeLaurentis, the individual conducting the home inspection, show that such mud tubes might indicate evidence of either an active termite infestation or one that had previously been treated.[2] A copy of DeLaurentis's home inspection report submitted on summary judgment states "[s]uggest consulting with exterminator if no evidence of specific treatment."
The defendants then prepared and submitted to the defendant an addendum to the purchase and sales agreement requesting that she "provide documentation for termite treatment." In response to that request. the defendant provided a letter dated May 5, 1990, signed by Richard Cusano, president of Professional Exterminating Company, and captioned "Termite Guarantee." This letter promised to re-treat any recurrence of termites within the following two years but limited its guarantee to the exterior perimeter of the house, which was also the area where DeLaurentis had found termite evidence. After they moved into the house, however, the plaintiffs discovered termites inside the house. During this litigation, it became apparent that termites inside the house had been the original reason the defendant and her deceased husband had sought termite treatment and that the defendant had failed then to provide the original CT Page 265 service agreement with Cusano, which had stated
 we will trench and treat the soil around the outside foundation of the house. . . . in the rear of the house from the outside. . . .[,] [and] [i]n areas where we know there are no pipes in the floor we will treat under the basement slab.
The plaintiffs claim that if the defendant had supplied the service agreement they would have been alerted to the possibility of interior termite problems.
It is true, as defendant asserts that "[w]here a party realizes he has only limited information upon the subject of a contract, but treats that knowledge as sufficient in making the contract he is deemed to have assumed the risk of a mistake." Pacelli Bros. Transportation Inc. v.Pacelli, 189 Conn. 401, 408, 456 A.2d 325 (1983). The defendant citesPacelli to support her claim that the defendants' home inspection precludes reliance, as a matter of law, on any misrepresentations she made: "[t]he very act of having inspection done, regardless of its quality, is testimony to the lack of reliance on the Defendant "s representations." (Defendant's Memorandum in Support of Motion for Summary Judgment, p. 11.) The crux of the defendant's claim is her assertion that: "If after hearing the defendant's words he makes an investigation of his own, and acts upon the basis of the information so obtained, he may be found not to have relied on the defendants." (Internal citation omitted.) Id., 13.
The defendant has cited language from Prosser's treatise on torts and the Connecticut Law of Tort by Wright, Fitzgerald Ankerman to the effect that making an independent investigation precludes a home purchaser from claiming reliance on misrepresentations by the seller as to the condition of the premises. Section 547 of the Restatement (Second) of Torts more fully states the modern rule on the effect of an independent investigation on the liability of one making misrepresentations:
 (1) Except as stated in Subsection (2), the maker of a fraudulent misrepresentation is not liable to another whose decision to engage in the transaction that the representation was intended to induce is not caused by his belief in the truth of the representation but is the result of an independent investigation made by him.
(2) The fact that the recipient of a fraudulent misrepresentation is relying upon his own investigation does not relieve the maker from liability if he by false statements or otherwise intentionally prevents the investigation from being effective. CT Page 266
3 Restatement (Second) Torts § 547 (1977).
The comment to subsection one of § 547 confirms the assertion of the defendant that "[o]rdinarily one who makes an investigation will be taken to rely upon it alone as to all facts disclosed to him and all facts that must have been obvious to him in the course of it." 3 Restatement (Second), Torts § 547, comment (a) (1977).[3] Neither of the authorities cited by the defendant nor the Restatement, however, directly address the particular situation here, however: where the purchaser, after conducting the independent investigation, makes additional inquiries of the seller, who then allegedly makes additional misrepresentations. The Restatement makes clear that the key to whether an independent investigation precludes recovery from one making misrepresentations is the question of justifiable reliance. The law will presume reliance "as to all facts disclosed to him and all facts that must have been obvious to him in the course of' the investigation.
Here, the investigation did not disclose all the necessary facts to the home owners, but simply revealed evidence of termite damage that might indicate either active or successfully treated infestation. The fact that the plaintiffs then sought further information from the defendant would seem to preclude exclusive reliance on their own investigation. As comment a to § 547 indicates, "It is only when he relies upon his investigation and does not rely upon the false statement that he cannot recover. Whether he does rely upon the one or the other or in substantial part upon both . . . is a question of fact and is for the jury to determine, unless the evidence clearly indicates only one conclusion." This case fits within that portion of the comment stating that "[p]articularly when the investigation produces results that tend to confirm the representation but are still somewhat inconclusive, it may be found that the recipient has relied upon both the investigation and the representation and that the latter has played a substantial part in inducing him to take action."
Whether the plaintiffs' decision to seek information from the defendant about prior termite treatment instead of obtaining an independent termite assessment was reasonable, whether the specific inquiry they made of the defendant was reasonable in light of the information they and their home inspector had learned, and whether they justifiably relied on the response provide by the defendant all are classic questions of fact for a jury to resolve.
A home purchaser's independent inspection thus does not immunize the seller from the effects of subsequent fraudulent misrepresentations. Whether the buyer has justifiably relied on those subsequent CT Page 267 representations is a question of fact for the jury. Where the buyer conducts a home inspection and makes reasonable follow-up inquiries to the seller as the result of the information learned from that inspection, the seller's responses to those inquiries contain fraudulent misrepresentations to induce the sale, and the buyer reasonably relies on those subsequent misrepresentations, the trier of fact may find that the later misrepresentations have intervened to vitiate any reliance on the independent investigation. Based on the facts as presented in the attachments to the motions for summary judgment, there remain material issues of fact in dispute as to whether the plaintiffs' follow-up inquiry was a reasonable response on their part to the results of the home investigation, whether the defendant's answer was a reasonable response to that inquiry, and whether, based on all the information, the plaintiffs justifiably relied on any misrepresentations by the defendant.[4]
The second amended complaint claims that the defendant's assertion, on the Residential Property Condition Disclosure Report, of no floor problems fraudulently misrepresented the condition of the floors in the house in two respects: the wood parquet floors in certain rooms buckle during humid or moist weather, and certain floor tiles in the "great room" of the house were loose or missing. As to the buckling parquet wood floors, the home inspector's report checked the column for bedroom floors indicating that "this item is functioning less than originally intended, maintenance, repair or upgrade is advised." Check marks indicated that the other floors were in good condition. The home inspector testified in his deposition that he did not detect any buckling in the floors; but that, contrary to the allegations of the complaint, rugs covering the floors in the various rooms would not have prevented him detecting such buckling. The defendant testified at her deposition that the floor problems were moisture and humidity related and "if the weather was damp, they would puff up a little bit." There is no information presented on summary judgment as to the weather, moisture or humidity conditions at the time of the inspection.
From all the information available on summary judgment, it is thus perfectly possible that the floors were not buckling at the time of the home inspection. A concealed defect, such as wood floors that buckle, or buckle enough to be noticed, only during damp or humid weather, might vitiate a seller's reliance on a home inspection report that could not have detected the buckling. "[I]f the condition is a latent one, which the inspection or investigation could not reasonably be expected to discover, the recipient may still be relying upon the representation as well as the investigation." 3 Restatement (Second) Torts, § 547, comment a (1977).
CT Page 268 For a misrepresentation to be a cause in fact of the pecuniary loss that results from the plaintiff's action or inaction, the plaintiff must have relied upon the misrepresentation in incurring the loss. It is not, however, necessary that his reliance upon the truth of the fraudulent misrepresentation be the sole or even the predominant or decisive factor in influencing his conduct. It is not even necessary that he would not have acted or refrained from acting as he did unless he had relied on the misrepresentation. (Compare s 432). It is enough that the representation has played a substantial part, and so has been a substantial factor, in influencing his decision. Thus it is immaterial that he is influenced by other considerations, such as similar misrepresentations from third persons, if he is also substantially influenced by the misrepresentation in question.
3 Restatement (Second) Torts, § 546, comment b (1977).
As for the loose and missing tiles in the great room, on the other hand, the plaintiffs submitted no documentation as to subsequent misrepresentations or concealed defects to defeat the rule of § 547 that one who makes an investigation will be taken to rely upon it alone. Accordingly, as to the claim in paragraphs 5d and 5e of the first and second paragraphs of the second amended complaint that the defendant's representation of "no floor problems" was false because tiles in the great room were loose and missing, the court finds no reason not to grant summary judgment to the defendant as to this allegation. Having conducted an independent investigation and proffering no reason why such an investigation could not or did not reveal such a defect, the plaintiffs must be deemed not to have relied on any misrepresentation by the defendant about these loose or missing tiles. That allegation is therefore appropriate for resolution by summary judgment in the defendant's favor.[5]
The court thus denies the defendant's motion for summary judgment on the first two counts of the complaint, except as to the allegations regarding loose and missing tiles in the great room, as material facts remain in dispute regarding the remaining allegations.
The defendant's motion for summary judgment on the third count for breach of contract, however, is granted. Documents attached to the defendant's motion for summary judgment and not contested by the plaintiffs establish that the defendant completed the repair obligations she had assumed in the sales agreement. CT Page 269
The court denies the defendant's motion for summary judgment on the special defense of accord and satisfaction, as the only documentation to support it is an affidavit by the plaintiff as to what occurred during a closing that she did not attend. The affidavit is thus obviously the result of hearsay information provided to her. Under Practice Book §17-45, documents submitted in support of or opposition to motions for summary judgment must be probative — either in the form of affidavit, sworn testimony, or other documentary evidence. Hearsay evidence is not sufficient to establish a material fact on a motion for summary judgment. 2830 Whitney Avenue Corp. v. Heritage Canal DevelopmentAssociates, Inc., 33 Conn. App. 563, 568, 636 A.2d 1377 (1994).
 III — Plaintiffs' Motion for Summary Judgment 
As to the plaintiffs' motion for summary judgment on the fraud and theft counts, there remain material issues of fact in question as to whether any misrepresentations were fraudulent or innocent and whether the plaintiffs were acting in reasonable reliance on those misrepresentations. For example, whether the letter describing a termite guarantee provided by the defendant was a reasonable response to the plaintiffs' inquiry for evidence of prior termite treatment is a question of fact for the jury to resolve. Whether any misrepresentations by the defendant were fraudulent or innocent is a material issue of fact still in dispute. The plaintiffs claim that merely providing the termite guarantee letter is a fraudulent misrepresentation because Cusano had to come back in later years to re-treat the problem; but the documentary evidence provided on summary judgment does not conclusively establish that the defendant knew he had done so. The plaintiffs' admissions in their deposition that two days before the closing they learned of the floor problems raise a question of material fact as to their reliance on any misrepresentations by the defendant. Finally, whether the plaintiffs reasonably relied, in view of what their home inspector told them, on the termite guarantee letter provided to them by the seller is also a question of fact to be resolved by the jury.
For the foregoing reasons, the court enters summary judgment for the defendant on the claims of misrepresentation in the first and second counts of the second amended complaint with regard to the loose or missing files in the great room and on the third count. The court denies the parties' cross-motions for summary judgment on the remaining counts.
SO ORDERED.
BY THE COURT CT Page 270
STEPHEN F. FRAZZINI JUDGE OF THE SUPERIOR COURT