**Michael G. TYSON, Plaintiff,**

v.

**William D. CAYTON, Sports of the Century, Inc., Big Fights, Inc., Reel Sports, Inc., Defendants.**

No. 88 Civ. 8398 (JFK).

United States District Court, S.D. New York.

Jan. 22, 1992.

70

Williams & Connolly, Washington, D.C.
(Vincent J. Fuller, Kathleen L. Beggs, Paul
K. Dueffert, Dennis M. Black, of counsel),
for plaintiff.

Kaye, Scholer, Fierman, Hays & Han-
dler, Washington, D.C., New York City
(David J. Branson, Tracey E. Aronson, of
counsel), for defendants.

## OPINION AND ORDER
KEENAN, District Judge:

### INTRODUCTION

This lawsuit is a contest between two financial heavyweights to secure title to further wealth. The three corporate defendants [1] and William D. Cayton, Mike Tyson's manager, have moved for summary judgment on counts II through VII of Tyson's Third Amended Complaint.[2] Those counts seek rescission of all contracts between plaintiff and defendants, as well as full restitution of all monies Cayton earned under those contracts. Tyson has cross-moved for summary judgment on Counts II through VI, asserting that his winning on those counts would moot Count VII. Further, Tyson has moved for summary judgment on all of defendants' counterclaims, which seek to enforce the contracts between the defendants and Tyson. For the reasons that follow, defendants' motion for partial summary judgment is granted in part and denied in part. Tyson's cross-motion for partial summary judgment on the complaint and on defendants' counterclaims is denied.

### BACKGROUND

In June 1988, Tyson filed a lawsuit against Cayton in New York Supreme Court, seeking rescission of their fourth boxer-manager contract[3] on the ground that he had been fraudulently induced to sign it and that Cayton had breached his fiduciary duties. *See Tyson v. Cayton,* Index No. 12888/88 (New York Sup.Ct. August 15, 1988), at Puccio Aff. ¶ 8, Ex. 6. The parties dismissed that case with prejudice in July 1988, *see* Puccio Aff. ¶¶ 13–15, Exs. 3–4, after executing a written settlement agreement on July 25, 1988 and a new boxer-manager contract ("Boxer–Manager Contract No. 5") on July 27, 1988. As part of the settlement, Tyson and Cayton executed Boxer–Manager Contract No. 5, which decreased Cayton's share of Tyson's boxing earnings from 33.3%, as provided in Contract No. 4, to 20%. Further, the parties executed a new personal manager contract,[4] making the relationship non-exclu-

---

1. Cayton is the sole shareholder of the three corporate defendants. Defendant Big Fights, Inc. has been in the business of acquiring and marketing professional fight films for thirty-odd years. It owns a library of approximately 17,-000 fight films and licenses the use of those films to such entities as television networks. Reel Sports, Inc., also incorporated about forty years ago, has had personal managerial contracts with several boxers, including Tyson, and arranges non-boxing appearances for those boxers. Sports of the Century, Inc. was incorporated in 1988 solely to receive and account for revenues flowing from the June 27, 1988 match between Tyson and Michael Spinks. It has been inactive since reconciling and distributing the money in 1988. *See* Memorandum in Support of Defendants' Motion for Partial Summary Judgment ("Cayton Mem.") at 3.

2. The only remaining Count, Count I, seeks an accounting from defendants. Cayton concedes that Tyson is entitled to an accounting, *see* Cayton Mem. at 2, and therefore has not moved for summary judgment on this count. Rather, defendants request that this Count be referred to a Master, and plaintiff does not object. *See* Plaintiff's Reply Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment ("Tyson Reply") at 56–57 n. 46.

3. Tyson has had a total of five boxer-manager contracts with Cayton and the now-deceased Jim Jacobs, Cayton's former partner and Ty-

son's original manager. The first contract, dated November 5, 1984, named Jacobs as Tyson's manager. It was voided by a new contract between Tyson and Jacobs that was signed on October 14, 1986. Contract No. 2 was in turn voided by a third boxer-manager contract that Tyson and Jacobs executed on February 12, 1988. On the same day, Tyson signed a conditional boxer-manager contract naming Cayton as his manager. This contract was to take effect only upon the death of Jim Jacobs and, like the other contracts, had a four-year term, which was scheduled to expire on February 12, 1992. Finally, on July 27, 1988, Tyson signed Boxer–Manager Contract No. 5, naming Cayton as his manager. This contract, which was in force at the time Tyson filed this action, also has a four-year term scheduled to expire on February 12, 1992. *See* Cayton Mem. at 4.

4. The first personal manager contract, executed on September 28, 1984, provided that Reel Sports, Inc. would act as Tyson's exclusive personal manager and obtain non-boxing appearances for him. The contract was to expire on June 30, 1991, but it was modified during the July 1988 settlement process. The resulting contract, Personal Manager Contract No. 2, provided a non-exclusive agency scheduled to expire on June 30, 1991. Contract No. 2 was in force when Tyson filed this action. *See* Cayton Mem. at 5.

sive and reducing Cayton's share of Tyson's non-boxing earnings from 33.3% to 16.6% for renewal commercials and 10% for new commercials. Four months later, Tyson filed this lawsuit, seeking to rescind the settlement agreement, Personal Manager Contract No. 2, a film rights agreement between Cayton and Tyson,[5] Boxer–Manager Contract No. 4, and all other contracts between Tyson and the defendants. After the parties cross-moved for partial summary judgment, oral argument was heard on December 18, 1991.

## DISCUSSION

Federal Rule of Civil Procedure 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). A motion for summary judgment may be granted under Rule 56 if the entire record demonstrates that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). When viewing the evidence, the Court must "assess the record in the light most favorable to the non-movant and ... draw all reasonable inferences in its favor." *Delaware & Hudson Railway Co. v. Consolidated Rail Corp.,* 902 F.2d 174, 177 (2d Cir.1990); *see Francis v. Coughlin,* 891 F.2d 43, 46 (2d Cir.1989). Summary judgment is appropriate if " 'no reasonable trier of fact could find in favor of the non-moving party.' " *United States v. All Right, Title & Interest in Real Property, etc.,* 901 F.2d 288, 290 (2d Cir.1990) (quot-

ing *Murray v. National Broadcasting Co., Inc.,* 844 F.2d 988, 992 (2d Cir.), *cert. denied,* 488 U.S. 955, 109 S.Ct. 391, 102 L.Ed.2d 380 (1988)). In making this determination, the district court may not resolve issues of fact; it may only ascertain whether such issues are present. *See Donahue v. Windsor Locks Bd. of Fire Cm'rs,* 834 F.2d 54, 58 (2d Cir.1987). In response to a properly supported motion for summary judgment, the non-movant may not rest on the allegations in its pleadings, but must adduce "significant probative supporting evidence" demonstrating that a factual dispute exists. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510.

The motion papers are saturated with factual disputes that often boil down to a swearing contest between the litigants. For this reason, summary judgment is inappropriate on many of the counts. The opinion will address each count of the complaint in turn.[6]

### A. COUNT II

Count II of the Third Amended Complaint alleges that Cayton fraudulently induced Tyson to enter into the July 1988 Settlement Agreement and Boxer–Manager Contract No. 5, thereby entitling Tyson to rescission. *See* Third Amended Complaint ¶ 61. Tyson alleges that Cayton fraudulently induced him to sign the contracts by making seven material misrepresentations and by fraudulently concealing ten material facts during the settlement negotiations. *See* Third Amended Complaint ¶ 54(a)–(g), ¶ 59(a)–(j). The misrepresentation and concealment claims will be treated separately.

#### 1. Fraudulent Misrepresentation

To establish a claim of fraudulent inducement under New York law, plaintiff must satisfy each of the following ele-

---

**5.** The Film Revenue Contract, executed by a letter agreement of May 8, 1986, provided that Tyson would receive 66.6% of all revenue that Reel Sports, Inc. derived from licensing his fight films. The agreement was for an indefinite period and was in force when Tyson filed this action. *See* Cayton Mem. at 5; Plaintiff's Memorandum in Opposition to Defendants' Motion for Partial Summary Judgment and in Support

of Plaintiff's Cross–Motion for Partial Summary Judgment ("Tyson Mem.") at 2–3.

**6.** Count I of the Third Amended Complaint seeks an accounting. Because both sides agree that an accounting is appropriate and therefore neither has moved for summary judgment on Count I, *see supra* at 1 n. 2, this Opinion does not address that Count.

ments: that 1) a misrepresentation was made 2) of a material fact 3) that was false when made and 4) that the maker knew to be false when he made it and 5) that was made with a present intent to deceive and induce reliance and 6) upon which plaintiff justifiably relied 7) without notice of its falseness 8) to his injury. *See Heineman v. S & S Machinery Corp.*, 750 F.Supp. 1179, 1183 (E.D.N.Y.1990) (citing *Murray v. Xerox Corp.*, 811 F.2d 118, 121 (2d Cir. 1987)).

Cayton denies that he made any of the seven misrepresentations that Tyson alleges.[7] He asserts that Tyson's claim of fraudulent misrepresentation must fail because there is no evidence that Cayton made any of these representations. *See* Cayton Mem. at 9. Even if the statements had been made, Cayton argues, they are not statements of material fact. Cayton also asserts that there is no evidence that he intended not to perform in accordance with the alleged representations, and finally that Tyson did not rely on these representations in settling the litigation. *See* Cayton Mem. at 17 (citing Tyson Dep., April 4, 1991, pp. 117–119, 135–140).

Tyson's Opposition and Cross Motion fails to respond to these arguments. It addresses only Count II's fraudulent concealment allegation, ¶ 59(a)–(j), omitting

any discussion of Count II's fraudulent misrepresentation allegation, ¶ 54(a)–(g). Tyson himself has denied or is unable to recall that Cayton made any of the misrepresentations that Tyson alleged in his complaint. Thus, plaintiff did not dispute paragraph 63 of Cayton's 3(g) statement, which asserted: "At Tyson's deposition, each alleged representation of Count II, para. 54(a) through (g) was read to Tyson, and he stated either that Cayton did not make such a representation or that he (Tyson) could not remember it." *See* Plaintiff's Response to Defendants's Rule 3(g) Statement ¶ 63 ("Not disputed"). Therefore, the undisputed evidence is that the alleged representations were not made. *See* Tyson Dep., Jan. 9, 1989 pp. 196–203; Winston Dep., April 15, 1991 p. 32, 34; Puccio Aff., ¶¶ 12, 13; Cayton Aff., ¶¶ 78, 83. Because Tyson has failed to provide any evidence that Cayton made fraudulent oral representations during the settlement negotiations, Cayton's motion for summary judgment on paragraph 54(a)–(g) of Count II is granted.

### 2. Fraudulent Concealment

Paragraph 59 of Tyson's Third Amended Complaint alleges that Cayton fraudulently concealed ten material facts that would have led Tyson to reject the July 1988 settlement agreement and Boxer–Manager Contract No. 5.[8] Tyson there-

---

**7.** Paragraph 54 of the Third Amended complaint charges that Cayton misrepresented to Tyson that

"a. Cayton would respect Tyson's wishes and would give Tyson control over the promotion of Tyson's career;

b. Cayton would distribute all funds to which Tyson was entitled arising out of the Tyson/Spinks bout;

c. Cayton would promptly provide a full and complete accounting of all funds, assets, investments or other proceeds that Cayton was holding for the benefit of Tyson;

d. Cayton would cooperate fully with Tyson's agents, attorneys and representatives with respect to any professional endeavors Tyson wished to pursue;

e. Cayton would arrange for fair and equitable commercial and professional agreements and would do so with the directions and guidance of Tyson and his agents and representatives;

f. Cayton would confer with Tyson and his agents and representatives in connection with the propriety of any commercial contracts, tele-

vision or exhibition agreements of promotional agreements relating to or affecting Tyson's career or Tyson's bouts;

g. Cayton would deliver to Tyson all assets or funds held by Cayton for the benefit of Tyson."

**8.** Cayton is alleged to have fraudulently concealed the following ten "material facts":

"a. Cayton had improperly deducted various personal and managerial expenses "off the top" instead of properly deducting them from the manager's share of fight revenues;

b. Cayton had violated [New York State Athletic Commission] rules by acting as a boxing manager without a license, by participating as one of two managers for Tyson, by acting as a matchmaker without a license, by acting as a promoter without a license, by acting as a promoter and a manager at the same time, and by acting as a matchmaker and a manager at the same time;

c. Cayton had wasted Tyson's assets and monies through, among other things, excessive expenditures on such things as Tyson's training expenses;

fore argues that rescission of the settlement agreement and Contract No. 5 is required.

Cayton asserts that plaintiff's fraudulent concealment claim is barred under the Second Circuit's decision in *Bellefonte Re Insurance Co. v. Argonaut Ins. Co.*, 757 F.2d 523 (2d Cir.1985). The parties in that case had been involved in a dispute over the validity of certain reinsurance contracts, and later entered into a settlement agreement. Four years after executing this agreement, plaintiffs sued, seeking rescission of the settlement agreement on the ground that defendant had fraudulently induced it to enter into the agreement by failing to disclose material facts about its fraudulent behavior. The Second Circuit stated that

> plaintiffs' argument is, in essence, that where the parties have sought to settle a claim of fraud, they cannot be bound by a settlement agreement unless the alleged defrauder has made full disclosure to the other party prior to settlement. We know of no authority to that effect, and we find the contrary principle established by *Alleghany Corp. v. Kirby*, 333 F.2d 327 (2d Cir.1964), *aff'd on reh'g*, 340 F.2d 311 (1965) (en banc; per curiam), *cert. dismissed*, 384 U.S. 28 [86 S.Ct. 1250, 16 L.Ed.2d 335] (1966).

757 F.2d 523, 527 (2d Cir.1985).

Tyson claims that *Bellefonte* does not apply "because of a critical distinction: the defendant in Bellefonte was not subject to fiduciary duties, including the duty to disclose." Tyson Mem. at 84. Citing the Restatement (Second) of Agency § 390 and a Connecticut case, *Pacelli Bros. Transp., Inc. v. Pacelli*, 189 Conn. 401, 456 A.2d 325 (1983), Tyson asserts that fiduciaries have a duty of full disclosure in settling fraud cases.

This argument fails under *Bellefonte*. Bellefonte relied on an earlier Second Circuit case, *Alleghany Corp. v. Kirby*, 333 F.2d 327 (2d Cir.1964), *aff'd on reh'g*, 340 F.2d 311 (1965) (en banc), *cert. dismissed*, 384 U.S. 28, 86 S.Ct. 1250, 16 L.Ed.2d 335 (1966), in which plaintiff shareholders sued officers and directors of Alleghany Corporation for fraud in a prior state court action. Plaintiffs had alleged that the officers and directors had wrongfully converted the corporation's assets by buying from the corporation, for their personal account, shares of a new and successful subsidiary that the corporation had acquired as a corporate investment. After the parties settled the state-court fraud claim, the corporation sued to set aside the settlement on the ground that it had been obtained by fraud. The corporation alleged that the main corporate director had wrongfully concealed the extent of his fraud, and that the settlement should therefore be voided. Rejecting the argument that a director/fiduciary has an affirmative duty in a fraud suit to disclose his wrongdoing before settling the claim, the Second Circuit stated that

> even fraud cases can be settled. A settlement is the price of peace. There is no prerequisite to the settlement of a fraud case that the defendant must come forward and confess to all his wrongful acts in connection with the subject mat-

---

d. Cayton had usurped Tyson's business opportunities by, among other things ... having the film rights in Tyson's fights assigned to Cayton and Jacobs instead of to Tyson;

e. Cayton had acted as Tyson's personal manager without maintaining the requisite license as a theatrical employment agency;

f. Cayton had taken multiple commissions out of the same funds by, for example, first taking a 20% commission from foreign television sales via Big Fights and then taking one-third as Tyson's boxing manager;

g. With Cayton's knowledge, the attorney representing Tyson in the New York Action was not acting in Tyson's best interest because of a conflict the attorney had with another client;

h. Cayton had been gouging Tyson for years by taking a one-third share as Tyson's personal manager through Reel Sports, an amount greatly in excess of the reasonable and customary fee for the services Reel Sports provided;

i. Cayton had caused Reel Sports to take undeserved commissions when, although Reel Sports purported to act as Tyson's personal agent, Reel Sports instead hired other professional agents to procure contracts on Tyson's behalf ...;

j. Cayton had exploited Tyson's trust, youth, and inexperience by, among other things, inducing Tyson to enter into the Letter Agreement of May 8, 1986."

Third Amended Complaint, ¶ 59(a)–(j).

ter of the suit. Usually such settlements are accompanied by vigorous denials of any fraud whatsoever.

*Id.* at 333.

As in *Alleghany,* plaintiff here devotes considerable energy to citing cases establishing the general principle that self-dealing directors have a duty to make full and frank disclosure. *See* Tyson Mem. at 77–83. These cases do not establish, as Tyson argues, that a fiduciary has a duty to present facts that might aid his adversaries in establishing his liability. In fact, the *Alleghany* Court rejected the very argument that Tyson makes here. *See Alleghany,* 333 F.2d at 334–35.

The policy underlying *Alleghany* and *Bellefonte* applies with equal force in the case at bar. The purpose of a settlement is to end litigation, not to provide a breather before the next round. Based on the holdings in those cases, Cayton's motion for summary judgment on Tyson's claim of fraudulent concealment, contained in Count II paragraph 59(a)–(j), is granted. Because Cayton has also been awarded summary judgment on paragraph 54(a)–(g) of Count II, Cayton's motion for summary judgment on Count II is granted in its entirety, and Tyson's cross-motion for summary judgment on Count II is denied.

### B. COUNT III

■ In Count III of the Complaint, Tyson seeks rescission of the Settlement Agreement and Boxer–Manager Contract No. 5 on the ground that Cayton materially breached both agreements between their execution in July 1988 and the filing of the complaint in November 1988.[9]

Cayton asserts that the "breaches" listed in paragraph 64 of Count III did not occur, and that even if they did, they are not material. *See* Cayton Mem. at 29. In fact, Cayton observes, only one material event occurred during those four months: Cayton refused to sign a contract between Don King and Tyson that would have given King exclusivity as Tyson's promoter for four years, as well as 33.3% of Tyson's net fight revenues.[10] Cayton denies, however, that his failure to sign was a material breach. *See* Cayton Mem. at 34.

As to paragraph 64(a), there is a material issue of fact as to whether Cayton provided Tyson with a "full and complete accounting" by promptly providing all relevant financial records and information to the lawyers that Tyson had retained to handle his divorce from Robin Givens. *See* Cayton Mem. at 30; Cayton Reply at 17–21; Tyson Mem. at 112–13; Tyson Reply at 29 n. 31. Therefore, Cayton's motion for summary judgment with respect to paragraph 64(a) is denied.

Tyson argues that there is no such issue of fact as to Cayton's breaching his fiduciary duty and duty of obedience to Tyson by refusing to sign the Don King–Tyson promotional agreement, *see* Tyson Mem. at 111, 113–21, allegations that are covered in subparagraphs 64(b) and (f) of the Complaint. Whether Cayton breached his fiduciary duties to Tyson by refusing to sign the King/Tyson promotional contract and by proposing his own version of the agreement is an issue to be determined by the trier of fact. It is clear that, as Tyson's boxing manager, Cayton had a more complex responsibility to his client than does an

---

**9.** Paragraph 64(a)–(g) of the Complaint alleges that Cayton materially breached the Agreement and the Contract by
  a. failing to render a full and complete accounting in violation of Section 1(d) of the Settlement Agreement;
  b. refusing to abide by Tyson's wishes for the direction of his career in violation of the fiduciary duty of obedience;
  c. violating NYSAC rules by acting as both a manager and a promoter in contravention of § 2 of Boxer–Manager Contract No. 5;
  d. violating the fiduciary duty of loyalty by publicly insulting Tyson;
  e. violating the fiduciary duty of loyalty by failing to keep Tyson fully informed of financial matters;
  f. attempting to induce Tyson to enter into a November 1988 agreement, thereby violating his duty of loyalty;
  g. failing to distribute to Tyson the proceeds from the Spinks bout in a timely fashion.

**10.** NYSAC rules require that a manager of record sign a promotional contract. Therefore, Cayton was included as a party to the agreement. *See* Cayton Mem. at 34.

ordinary fiduciary to his principal. Cayton was hired to *manage* Tyson, a function that anticipates something more than blind obedience to the boxer's every inclination. Whether Cayton elevated his own personal interests above those of Tyson in exercising his managerial responsibilities is an issue that the trier of fact must determine. Cayton's refusal to sign the King/Tyson contract does not in and of itself constitute a breach of Cayton's fiduciary duties. Thus, both parties' motions for summary judgment on paragraphs 64(b) and (f) are denied.

Cayton has moved for summary judgment on the remaining four subparagraphs in Count III, which allege other material breaches of the Settlement Agreement and Boxer–Manager Contract No. 5. Tyson neither opposed nor cross-moved for summary judgment as to these allegations, lettered subparagraphs (c), (d), (e) and (g). *See* Tyson Mem. at 114–21; Tyson Reply at 29. Therefore, Cayton's motion for summary judgment as to subparagraphs 64(c), (d), (e) and (g) is granted.

## C. COUNT IV

Count IV of the Complaint seeks rescission of the Reel Sports Contract of September 28, 1984, which was the first personal manager contract and which was modified by the 1988 settlement agreement. *See supra* at 71–72 & n. 4. Thus, Tyson seeks rescission of the contract *ab initio*, and restitution of any money Cayton earned under the contract.

Cayton argues that rescission is inappropriate for the following reasons: first, when he and Tyson entered into the contract, he was not Tyson's fiduciary; second, Cayton was not required to have a theatrical employment license to enter into such a contract, and did not breach his fiduciary duties to Tyson by executing the agreement; finally, this claim is barred by accord and satisfaction and res judicata. Tyson, of course, vigorously disputes each of these arguments. They are addressed briefly in turn.

■ If Cayton was a fiduciary when he and Tyson signed the agreement in 1984,

the execution of the contract was not per se a breach of Cayton's fiduciary duties; whether it was a breach is a disputed issue of fact.

■ Next, whether Reel Sports was an unlicensed theatrical employment agency, *see* Tyson Mem. at 121, is also an issue of fact. New York General Business Law § 172 provides that "no person shall open, keep, maintain, own, operate or carry on any employment agency unless such person shall have first procured a license therefor as provided in this article." Section 171(2)(d) defines "employment agency" as including "theatrical employment agencies," which in turn is defined as

any person [including corporations] ... who procures or attempts to procure employment for circus, vaudeville, the variety field, the legitimate theater, motion pictures, radio, television, phonograph recordings, transcriptions, opera, concert, ballet, modeling or other entertainments or exhibitions for performances, *but such term does not include* the business of managing such entertainments, exhibitions or performances, or the artists or attractions constituting the same, *where such business only incidentally involves the seeking of employment therefor.* N.Y.Gen.Bus.L. § 171(8) (emphasis added).

Whether Reel Sports only "incidentally" involved the seeking of non-boxing employment for Tyson is clearly a disputed issue of fact in light of the fact that the Reel Sports contract expressly stated that it was also a "personal manager" contract, and in light of Cayton's apparent performance of personal managerial services under the contract. If the trier of fact determines that the seeking of non-boxing appearances was more than "incidental," and that Reel Sports was therefore an unlicensed theatrical employment agency, then under Section 186 Reel Sports would be required to return any fee it earned under the agreement.

Finally, Cayton's accord-and-satisfaction argument fails because Cayton has not established beyond dispute that the parties

intended the 1988 settlement agreement to discharge "an unresolved obligation." *See Stahl Management Corp. v. Conceptions Unlimited*, 554 F.Supp. 890, 892 (S.D.N.Y. 1983).

For these reasons, both parties' motions for summary judgment on Count IV are denied.

## D.  COUNT V

■ Count V of the Complaint seeks rescission of the 1986 letter agreement relating to fight-film revenues on the ground that Cayton breached his fiduciary duties in inducing Tyson to sign the agreement. That agreement provided that Tyson would receive 66.6% of the income generated by Reel Sports' licensing of his fight films. Tyson alleges that Cayton induced him to sign the agreement by promising him that Tyson would own the films rather than merely receive royalty payments from their distribution. There is a clear dispute of fact as to whether Cayton ever made such an oral representation. Further, Cayton's executing the agreement was not, as a matter of law, a breach of his fiduciary duty. Both parties' motions for summary judgment on this Count are therefore denied.

## E.  COUNT VI

Count VI alleges breach of fiduciary duty by all the defendants, and requests that all contracts between defendants and Tyson be voided. Cayton argues that he is entitled to summary judgment on this count because its allegations duplicate those in the other counts. Tyson responds that the allegations in Count VI are conceptually different from allegations in the other counts, in part because stating the claim as one for tortious breach of fiduciary duty may entitle Tyson to punitive damages, Tyson Mem. at 151. Count VI is a mosaic of the factual disputes raised in the other counts. Therefore both parties' motions for summary judgment as to Count VI are denied.

## F.  COUNT VII

Count VII seeks rescission of Boxer–Manager Contract No. 4 on the ground that Tyson was fraudulently induced to enter into it. Cayton argues that he is entitled to summary judgment on this Count if defendants' motion for summary judgment on Count II was granted because Count VII would then be barred by an accord and satisfaction and res judicata. *See* Cayton Mem. at 55–56.

■ Count VII, which alleges fraudulent inducement of Boxer–Manager Contract No. 4, is the same claim that Tyson made in the June 1988 state-court litigation. Because the state action was settled in a written agreement and a stipulation of dismissal with prejudice was filed with the court, there was a judgment on the merits for res judicata purposes. *See Nemaizer v. Baker*, 793 F.2d 58, 60–61 (2d Cir.1986). Thus, Tyson is barred from relitigating any claims that "would have been decided had the first action been fully litigated." *Id.* at 61.

Tyson responds that the claim is not barred because Cayton fraudulently concealed his lack of a manager's license. As part of their 1988 settlement agreement, however, Tyson and Cayton signed a release that stated:

> we, William Cayton and Michael G. Tyson (Boxer) mutually release each other from any further liability under and by virtue of a certain contract entered into between us on the 12th day of February, 1988. We hereby agree that the said contract is to be considered cancelled and void and of no effect, this release to be effective from the date hereof.

This release voided Contract No. 4, and Tyson therefore cannot raise a claim under it. *See Scribner Co. v. Estate of Fine*, 161 A.D.2d 175, 554 N.Y.S.2d 881 (App.Div. 1990). Cayton's motion for summary judgment on Count VII is therefore granted.

## CONCLUSION

Cayton's motion for summary judgment on Count II, on subparagraphs 64(c), (d), (e) and (g) of Count III, and on Count VII is granted. The remainder of Cayton's mo-

tion is denied. Tyson's cross-motion for partial summary judgment is denied in its entirety, as is his motion for summary judgment on defendants' counterclaims, that issue not having been briefed.

The parties are to be ready for trial as of March 23, 1992. A copy of the Court's pretrial requirements is appended to this Opinion for the parties' convenience.

SO ORDERED.