DORIS V. ADAMS, EXECUTRIX (ESTATE OF EMMETT C. ADAMS), ET AL. *v.* CHARLES E. WILLIAMSON, GUARDIAN AD LITEM, ET AL.

BALDWIN, C. J., KING, MURPHY, SHEA and ALCORN, Js.

Argued June 7—decided November 7, 1962

*John J. Kennedy,* with whom were *David G. Marvin* and, on the brief, *John D. Walker,* for the appellants (plaintiffs).

*Frank L. Wilder,* for the appellee (named defendant).

KING, J. Doris V. Adams, hereinafter called the plaintiff, qualified, and is now acting, as executrix of the will and codicil of her husband, Emmett C. Adams. The codicil is without significance in this appeal and will not hereinafter be mentioned. The testator provided for certain nonresiduary legacies, including one of which the plaintiff was beneficiary, and established a trust of the residue. The plaintiff and Rodney D. Adams were named, and are now acting, as cotrustees.

The plaintiff's legacy was established by a rather elaborate provision forming article second of the will. In their stipulation, the parties described it as "what is commonly known as a 'marital deduction dollar legacy' . . . designed to give to the surviving spouse the maximum legacy which will qualify for the marital deduction under the Federal estate tax laws." The stipulation further states that "[s]uch legacy must be satisfied in dollars, or in kind valued as of the date of distribution, and the amount of such legacy is determined by the marital deduction as finally determined by the Federal estate tax return filed by the estate. A legatee of such a gift is not entitled per se to any part of the income earned during administration of the estate or to any part of the [capital] gains arising out of the sale of assets of the estate."

The plaintiff, on February 15, 1957, filed a first interim account, covering her administration of the estate as executrix for the period from June 27, 1955, to December 31, 1956. This account, in addition to the items normally set forth in such an account, showed a transfer to the plaintiff of certain

cash and securities in partial satisfaction of her legacy and the payment of additional cash to her as "income." The account also disclosed payment of cash legacies to other beneficiaries and an advance distribution of certain assets to the trustees of the residuary trust. After notice and hearing, the account was allowed on March 27, 1957.

On October 6, 1959, the plaintiff filed a second interim account as executrix, covering the period from January 1, 1957, to June 30, 1959. This account, in addition to the items normally set forth in such an account, showed further transfers to the plaintiff in further partial satisfaction of her legacy, and the payment of additional cash to her as "income." It also disclosed that all taxes, including the federal estate tax and the Connecticut succession tax, had been paid. After notice and hearing, this account was allowed on November 24, 1959.

The parties have stipulated that the payments and transfers to the plaintiff, as shown in the two interim accounts, included payments on account of the plaintiff's claimed share of the income earned, and capital gains realized, by the estate.

On January 8, 1960, the plaintiff filed her final account as executrix, covering the period from July 1, 1959, to December 15, 1959. At the hearing on that account, the guardian ad litem of minor and undetermined and unborn contingent beneficiaries of the trust objected to items appearing in all three accounts, and the Probate Court rejected the final account. It was conceded that the final account was incorrect in that, as a result of the plaintiff's erroneously construing the terms of her legacy as entitling her to a share of the income earned and the capital gains realized by the estate, the account showed substantial overpayments to her. The plain-

tiff then, for the first time, realized that she had also erroneously made overpayments to herself during the period covered in the interim accounts. The Probate Court, besides rejecting the final account, of which action the plaintiff makes no complaint, revoked the decrees allowing the first and second interim accounts, which admittedly were incorrect by the amounts of the overpayments, and ordered the restoration to the estate of the aggregate of the overpayments. The plaintiff, individually and as executrix, appealed from the order and decree of the Probate Court insofar as it revoked the decrees allowing the two interim accounts and ordered restoration of the overpayments reflected in them.

The guardian ad litem claimed that the failure of the Court of Probate to order notice of the hearings on the interim accounts to be given to him[1] made the decrees allowing these accounts ex parte, at least as to the wards ad litem, and that therefore the decrees were subject to revocation under what is now General Statutes § 45-20. See cases such as *Murdoch* v. *Murdoch,* 81 Conn. 681, 688, 72 A. 290; *Schutte* v. *Douglass,* 90 Conn. 529, 531, 537, 97 A. 906; *Haverin* v. *Welch,* 129 Conn. 309, 312, 27 A.2d 791. For reasons hereinafter set forth, it is unnecessary to determine this precise claim.

The position of the plaintiff is, first, that the revoked decrees were not ex parte and consequently

---

[1] The order of notice on the first interim account called for notice by mail to each of the two cotrustees and by publication. That on the second interim account called for notice by mail to each of the two cotrustees but did not call for notice by publication. Neither notice made reference to the fact that the interim accounts reflected distributions to the plaintiff and other legatees. See *State* v. *Glen Falls Indemnity Co.,* 120 Conn. 178, 183, 179 A. 823. The first notice ordered to be given to the guardian ad litem was that covering the hearing on the final account.

were beyond the power of the Probate Court to re-voke[2] under the rule of cases such as *Haverin* v. *Welch,* supra; and, second, that she should not have been required to restore the overpayments since the decrees in question rendered res judicata her right to receive them. We need not consider the plaintiff's first contention if her second one is unsound, because even if the Probate Court could not, or did not properly, revoke the decrees, its error in revoking them would be harmless if the decrees, whether revoked or not, did not render res judicata the plaintiff's right to the overpayments. The fundamental issue on this appeal is the right of the plaintiff, as an individual recipient, to retain these overpayments as her personal property.

For the purposes of this appeal, only, we may assume, without so deciding, that the marital deduction legacy to the plaintiff was not of a type requiring a formal order of distribution under § 45-272 of the General Statutes. See *Greene* v. *King,* 104 Conn. 97, 103, 132 A. 411. We may also assume, without so deciding, that the wording of the notice of each of the hearings on the allowance of the interim accounts was adequate, under the rule of cases such as *State* v. *Glen Falls Indemnity Co.,* 120 Conn. 178, 183, 179 A. 823, even though it made no mention of the distributions reflected in those accounts. But even if we make these assumptions, so that it can be said that the approval of the interim accounts had the effect of valid orders of distribution defining the amounts properly payable to the plaintiff, the orders would not, under the circumstances of this

---

[2] The action of the Court of Probate in revoking the decrees was procedurally erroneous, since there was no compliance with the requirements of § 45-20 as to notice of hearing, nor did the guardian ad litem or anyone else make any written application for revocation.

case and the provisions of General Statutes § 45-21, render res judicata, as between the plaintiff as a beneficiary and the other beneficiaries of the estate, the issue of the amounts properly payable to the plaintiff as a beneficiary. We have held that an order of distribution, if erroneous, does not protect persons receiving distribution under it from liability to others who were erroneously omitted in the order. *Dickinson* v. *Hayes,* 31 Conn. 417, 426; *Gray* v. *Goddard,* 90 Conn. 561, 569, 98 A. 126; 1 Locke & Kohn, Conn. Probate Practice § 155 n.18; 2 id. § 595. Statutory recognition of that view may be found in the concluding proviso of § 45-21, the statute which accords protection to fiduciaries as to payments made by them under orders of the Probate Court.[3] It is not necessary, however, to hold that a valid order of distribution cannot, under any circumstances, render res judicata between contending beneficiaries the right of one, rather than the other, to receive distribution. There are obvious equitable considerations in the present case which require that the orders of distribution, if indeed it can be said that there were any, be given the limited effect, and only the limited effect, accorded them by cases such as *Dickinson* v. *Hayes* and *Gray* v. *Goddard,* supra.

The plaintiff is a fiduciary who has been placed by the testator in a position where her duty of loyalty to the other beneficiaries now conflicts with her own interests as a beneficiary. She chose to accept the fiduciary obligations notwithstanding the obvious potential conflicts of interest, and these have

---

[3] "Sec. 45-21. PAYMENTS BY EXECUTORS AND OTHERS PROTECTED. . . . [T]his provision shall not prevent a recovery of . . . money or property by the person entitled thereto from any person receiving it or in possession thereof."

now become actual conflicts of interest. "Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee [and we add an executrix] is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the 'disintegrating erosion' of particular exceptions (*Wendt v. Fischer*, 243 N.Y. 439, 444 [154 N.E. 303]). Only thus has the level of conduct for fiduciaries been kept . . . higher than that trodden by the crowd. It will not consciously be lowered by any judgment of this court." *Meinhard* v. *Salmon*, 249 N.Y. 458, 464, 164 N.E. 545; see Bogert, Trusts and Trustees (2d Ed.) § 543. This quotation, although from a decision of the New York Court of Appeals, aptly states the law of Connecticut as to conflicts of interest such as appear in this case. See cases such as *Phillips* v. *Moeller*, 148 Conn. 361, 369, 170 A.2d 897; *Zaubler* v. *West View Hills, Inc.*, 148 Conn. 540, 545, 172 A.2d 604.

The clear duty of the plaintiff, since it is established that she has overpaid herself under any proper interpretation of the will, is to restore the overpayments to the estate. It is not consonant with her fiduciary obligations to claim for herself as a beneficiary the benefits of decrees which she admits were erroneous. She cannot in good conscience invoke res judicata to produce so inequitable a result. It was not beyond the power of the Probate Court, nor of the Superior Court sitting as an

appellate court of probate, to take these equitable considerations into account, as each court did. *Potter's Appeal,* 56 Conn. 1, 16, 12 A. 513; 1 Locke & Kohn, Conn. Probate Practice § 98. It perhaps should be noted that there was no claim, nor any ground for a claim, that the Statute of Limitations had run in favor of the plaintiff, as an individual recipient of overpayments, under the rule of cases such as *Gray* v. *Goddard,* 90 Conn. 561, 569, 98 A. 126.

Finally, the plaintiff makes much of the fact that only the guardian ad litem objects to her appropriation to herself of the funds of the estate represented by the overpayments. This is, indeed, a most peculiar circumstance. These overpayments, however, if allowed to stand, would constitute a modification of the terms of the trust to suit the taste of the plaintiff and the present cestuis que trustent. Even without regard to the rights of the wards ad litem as contingent beneficiaries, such a modification is wholly illegal under our law. *Adams* v. *Link,* 145 Conn. 634, 638, 145 A.2d 753.

There is no error.

In this opinion the other judges concurred.