[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff brings this appeal from a decree of the Bristol Probate Court dated March 30, 1994 allowing a final accounting.
Facts
Charles Lehan died on October 10, 1992 in the Probate District of Bristol. On October 28, 1992 Louis DiVenere and Clarence LeBeau were appointed co-executors of his estate by the Bristol Probate Court (Court). The plaintiff Alfred F. Morrocco, Jr. (Morrocco) was retained as attorney for the estate. The defendants are the residual beneficiaries of the estate.
The executors filed their final accounting for the estate on September 2, 1993. That accounting showed attorney's fees of $12,000.00 to the Law Firm of Morrocco Associates, and CT Page 12343 $10,000.00 to each co-executor for fiduciary fees for a total of $32,000.00. A copy of that accounting was sent by the plaintiffs to all heirs and beneficiaries of the estate. On October 4, 1993 the beneficiaries filed their objection to that final accounting with the Court.
The Court scheduled a hearing on that final accounting for November 10, 1993 and notices were sent to all heirs, beneficiaries and fiduciaries. The defendants did not appear at that hearing.
The defendants each signed copies of a September 29, 1993 letter, all of which were received by the Court by October 21, 1993. This letter protested the attorney's and fiduciaries' fees.
The plaintiffs were aware of that letter to the Court asking for a review of the executors and attorney's fees.
Louis DiVenere made a collect telephone call to defendant Paul Lakschewitz, a beneficiary, on October 26, 1993. During this telephone conversation, DiVenere indicated to Lakschewitz that Attorney Morrocco and the co-executors would each be willing to reduce their respective fee by $2,000.00 in order to reach a settlement as to the appropriate amount of legal/executor fees. On or about October 28, 1993, Lakschewitz wrote to the co-executors saying that the beneficiaries had accepted the offer of the co-executors and Morrocco to reduce the total amount of executor/legal fees by $6,000.00.
On November 4, 1993, the beneficiaries filed in Court written notification that the beneficiaries and the plaintiffs had reached an agreement as to Attorney and Executor fees.
The plaintiffs attended the November 10, 1993 hearing and there indicated they wanted to settle the defendants' claims for attorney's and co-executors' fees. The Court refused to hear the plaintiffs on that issue and indicated that the Court was the sole authority to accept or reject the fees as shown on the accounting.
The defendants, although absent for the November 10, 1993 hearing, submitted an "agreement" to the Court showing $8,000 each for fiduciary fees and $10,000 attorney fees for a total of $26,000 instead of the $32,000. Judge Maynard instructed the fiduciaries and their attorney to submit time sheets to the Court CT Page 12344 to substantiate the $26,000 in fees.
There is no stenographic record of the proceeding in Court on November 10, 1993. Thereafter on November 15, 1993 and December 14, 1993 the clerk of the Court wrote to Attorney Morrocco to say that, "Despite the agreement of the parties, the Court is charged with reviewing the fees" and asking him for "a breakdown of the time records of the" fiduciaries and counsel. Attorney Morrocco and the co-executors filed their time sheets on or about January 21, 1994.
On February 3, 1994, Judge Maynard signed a decree allowing and approving a final accounting which allowed a total of $32,000.00 for fiduciary and attorney's fees. That accounting did not make reference to the agreed upon reduction in fees.
On or about February 10, 1994, a telephone inquiry was made to the Court by Morrocco's office asking the approved amount the residuary beneficiaries should receive. Someone in the Court said that $16,573.12 was available for distribution to each beneficiary.
Morrocco's office prepared a letter dated February 10, 1994, addressed to the beneficiaries noting that each beneficiary was entitled to a distribution of $16,573.11[1] under the will after costs. The letter further indicated that a check for that amount was enclosed. This letter and check were not sent to the beneficiaries on February 10, 1994. About one month later, Morrocco's office sent a second letter to the beneficiaries dated March 8, 1994. This letter stated that enclosed was a check in the amount of $500.00 which represented payment of the final balance to the beneficiary. This letter also noted that the estate was now closed. The beneficiaries received both of the aforementioned letters and checks on or about March 10, 1994.
After receiving both checks, the beneficiaries, through Paul Lakschewitz, contacted Ann Holihan the clerk of the Court to notify the Court of their claim that the distribution did not take into account the agreement of the parties to reduce fees.
On March 11, 1994, the Court, sua sponte, issued a notice of hearing in regard to correction of an alleged error in the February 3, 1994 decree. A hearing was held on March 30, 1994, and the Court issued a new decree decreasing the attorney's fees to $10,000 and the co-executor fees to $8000 each. There was no CT Page 12345 stenographic record of that hearing. From this decree the plaintiffs took this appeal.
The plaintiffs did not send any written communication to the Court or any beneficiary denying the claimed agreement in regard to the reduction in fees. It is clear that the Court believed there was such an agreement beginning at least as early as November 10, 1993. The letter from the Court's clerk makes that clear.
Morrocco individually and as attorney knew that the Court was relying on the alleged agreement. Morrocco as attorney had a duty to report this to the co-executors. Connecticut Rules of Professional Conduct §§ 1.3 and 1.4.
The plaintiffs point to C.G.S. § 45a-202(b) to show that regardless of the later decree reducing their fees the co-executors do not have to repay the sums distributed. The problem with that statute is that plaintiffs must prove good faith.O'Neil's Appeal From Probate, 55 Conn. 409. They have not sustained their burden of proof on that issue.
The Court had a clear right to reconsider and modify its decree. C.G.S. §§ 45a-128(a) and (b)(3). "Every court of record has an inherent power to make the history which it keeps of its proceedings speak the truth." Dunn's Appeal. Dunn v.Grant, 81 Conn. 127, 133; Taylor v. Gillette, 52 Conn. 216,218.
The approval of the first account was an error. The co-executors cannot keep their erroneously distributed funds based on that error.[2] That would be inequitable. Adams v. Williamson,150 Conn. 105. These two men are fiduciaries and owe a duty of undivided loyalty to all the beneficiaries. id. 112.
This court has equitable power to grant relief in regard to probate decrees. Miller v. McNamara, 135 Conn. 489.
The first decree was a mistake. If the probate court could not act equitably to correct that mistake this court can. id. 493-497.
Judgment for defendants and relief denied plaintiffs.
N. O'Neill, J. CT Page 12346