[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
CT Page 1827
Trial in this appeal from probate was held on November 13, 1996. Briefs were then submitted in December, 1996. I have reviewed the full record and counsel's submissions. For the reasons stated, I conclude that the evidence does not support any of the stated reasons for appeal. The appeal is therefore denied and the decision of the Glastonbury Probate Court is affirmed.
Before turning to the facts of this case, applicable legal principles will first be briefly reviewed.
Standard for Review
The trial of an appeal from probate in the Superior Court is not an ordinary civil action, but is a trial denovo. Prince v. Sheffield, 158 Conn. 286 (1969). When hearing an appeal from probate, the Superior Court sits as a Probate Court, not as a constitutional court of general or common law jurisdiction. Slattery v. Woodin, 90 Conn. 48 (1915). The stated reasons for appeal define the issues presented to the Superior Court. Berkeley v. Berkeley, 152 Conn. 398 (1965).See also Kerin v. Stangle, 209 Conn. 260,263-64 (1988); and Mulcahy v. Mulcahy, 84 Conn. 659 (1911).
The Superior Court on an appeal from probate sits as a court of limited jurisdiction and has only such powers as are given by statute to the probate court. Prince, supra,
at 293.
As has been noted:
 The powers and duties of an executor or administrator in respect of the custody and management of the estate are dependent on the terms of the will and the applicable statutes. In general, it is the duty of an executor or administrator to take custody of the estate and to administer it in such a manner as to preserve and protect the property therein for ultimate distribution to the proper persons. In the discharge of such duty he is regarded as a fiduciary occupying a position of trust and confidence, and is held to the highest degree of good faith. He is required to exercise that degree of care CT Page 1828 and diligence which careful and prudent persons ordinarily exercise under like circumstances in their own personal affairs, and for failure to exercise such care is liable in damages, although it is sometimes said that the prudence, care, and judgment of fiduciaries ordinarily capable under like circumstances furnish the standard by which the conduct of an executor or administrator is to be judged. An executor or administrator is not, however, a guarantor or insurer of the safety of the estate, nor is he expected to be infallible, and if, while acting in good faith, he exercises the required degree of care and diligence in the performance of his duties, he may not generally be held responsible for losses resulting from mistakes or errors in judgment. 33 C.J.S. Executors and Administrators, Section 184.
 See, e.g., Reiley v. Healey, 122 Conn. 64
(1936).
Factual Background — Summary
The facts in this case are set out in detail in the parties' written submissions. In summary, the pertinent facts are as follows.
Edwin C. Zajicek, the decedent, died testate on May 10, 1990, at an approximate age of 92. His Last Will and Testament, dated March 25, 1974, was admitted to probate by the Glastonbury Probate Court on June 7, 1990. The decedent, a widower, left four children — Richard E. Zajicek, Donald R. Zajicek, Douglas C. Zajicek and Nancy Z. Cook. They were to be equal beneficiaries under the Will of an estate that consisted, in part, of three parcels of real properties, which were rental properties when decedent died. The properties were a two-family house in East Hartford; a beachfront cottage in Clinton; and a garage or barn-type structure in Glastonbury. Decedent's Will named Douglas C. Zajicek and Nancy Z. Cook as co-executors.
On or about January 18, 1991, an inventory was filed with the court, putting the value of estate property at $1,050,078.42. A revised inventory, dated December 30, 1992, claimed various reduction in inventory items, including most notably a reduction in the value of the Clinton beachfront CT Page 1829 home from $460,000 to $285,000. All told, the revised value of the December 30, 1992, inventory was $871,977.42. The Clinton property was sold in November, 1992, for $220,000.
The record indicates that the combined federal and state succession tax liability of the estate exceeded $135,000, and that the estate lacked sufficient liquid assets to pay succession taxes as they became due.
Witnesses at trial were Douglas C. Zajicek and Richard E. Zajicek.
Discussion — Reasons for Appeal[1]
On May 26, 1993, Hon. Donald L. Hamer, after hearing, approved the final administration account submitted by the executors, made written findings, and issued orders and decrees relating to decedent's estate. On June 24, 1993, the Probate Court granted appellant s motion for appeal. Appellant claims that Judge Hamer erred in various ways. Each reason for appeal will now be discussed in order.
Reasons of Appeal No. 3
 "3. The Glastonbury Probate Court ruled that the Fiduciaries did not unreasonably or unnecessarily delay the settlement of the estate, although they did so delay, resulting in losses to the estate including but not limited to $21,161 of interest paid to Federal and State taxing authorities and a dramatic loss in fair market value of these parcels of real estate owned by the estate, estimated at $145,000 to $178,101 in losses."
The evidence does not support this reason for appeal. The Court fundamentally agrees with the arguments set out by appellees in their December 11, 1995, brief with respect to this claim.
As noted above, Edwin C. Zajicek died on May 10, 1990. The final accounting was filed on December 30, 1992. The decree approving the final accounting was issued on May 26, 1993.
Douglas C. Zajicek testified, in substance, that the CT Page 1830 estate remained open as long as it did due to a lack of sufficient liquidity in the estate to pay succession taxes. Consequently, one of the parcels of real property had to be sold. The evidence indicated that the full extent of the tax problem became apparent only in late 1990. Douglas C. Zajicek testified that while the sale of certain assets would have generated some income, it would have not produced sufficient income to pay the taxes owed. As appellees argue, few easily liquidated assets would have been left to pay other estate expenses. As appellees also note, no easily liquidated assets would have been left to pay other estate expenses.
Douglas C. Zajicek testified that the possibility of obtaining a mortgage on estate property was considered, but rejected, in light of the fact that all beneficiaries would be required to submit applications and undergo credit checks. Douglas C. Zajicek testified that the executors concluded that the expenses associated with obtaining the mortgage would be the rough equivalent of permitting interest to accrue on the unpaid taxes. Ultimately, the evidence indicated, tax obligations were fulfilled and a final accounting was filed, once sufficient funds had been generated through the sale of the Clinton property.
Appellant also claims that the executors' delays resulted in a loss of fair market value of the three real properties in the estate, pointing in particular to the fact that the value listed for the Clinton property in the original inventory was $465,000, while the property sold for less than half of that — only $220,000 — in November 1992.
However, the evidence does not indicate that the alleged delays were unreasonable or unnecessary, or that these alleged delays attributed to the fiduciaries were the cause of the diminution in value.
First, as appellees note, while the original inventory listed the property s value as $465,000, subsequent appraisals put the property's value at substantially lower values. See,e.g., Defendant's Exhibit D. The final account was amended to reflect the diminished value of the property. See Mix'sAppeal, 35 Conn. 121 (1868).
Second, as appellees note, the evidence indicates that the executors put the Clinton property up for sale in early CT Page 1831 1991; that it was on the market for over one and one-half years before it sold; that the executors listed the property with an agent after initial efforts to market it without an agent failed; and that the eventual buyer first offered $185,000, but ended up paying $220,000.
It is true that executors and administrators have an obligation to attempt to speedily resolve matters pertaining to the estate. Hall v. Meriden Trust Safe Co.,103 Conn. 226, 130 A. 157 (1925). But the argument that a fiduciary might have chosen to proceed in another manner does not prove that a lack of due diligence is present. The record does suggest that delays occurred, and that the value of the Clinton property diminished with time. But I conclude that the evidence does not support the argument that the executors acted imprudently or delayed unreasonably with respect to this reason for appeal, or that their alleged failures resulted in harm to the estate.
Reasons of Appeal No. 6
 "6. The Glastonbury Probate Court ruled that the Fiduciaries acted reasonably and prudently and, by implication, expeditiously, in their efforts to liquidate estate assets, although they had not."
The evidence does not indicate that the fiduciaries acted unreasonably or imprudently in their efforts to liquidate estate assets. While appellant is free to argue that the fiduciaries would have been well-advised to proceed other than as they did, and more expeditiously than they did, the evidence falls short of indicating that the actions they took were unreasonable and imprudent. As appellees note, the sale of certain assets would have yielded only a small percentage of what was needed to pay taxes. Sale of one of the real properties was needed to generate assets to pay taxes. With respect to this reason for appeal, as with others, the appellant has not provided the court with a measuring stick against which to evaluate the reasonableness and prudence of appellee's actions.[2]
Reasons of Appeal No. 7
 "7. The Glastonbury Probate Court ruled that the Fiduciaries had not breached their fiduciary duties by CT Page 1832 self-dealing in various respects, when they had done so."
Appellant claims that the fiduciaries engaged in inappropriate self-dealing by, among other things, renting a portion of the East Hartford residence to Douglas Zajicek's son, Matthew, at a rate below market value. Appellant correctly notes the caselaw making it clear that "An important aspect of an executor's fiduciary responsibility is the duty to maintain an undivided loyalty to the estate." Ramsdell v.Union Trust Co., 202 Conn. 57, 65 (1987). See Adams v.Williamson, 150 Conn. 105, 112 (1962); See also Folsom,Connecticut Estates Practice — Probate Litigation (1992), Section 4. 6.
As appellees note in their brief, however, Edwin Zajicek had set the $400 rent prior to his death, and Matthew performed certain chores in connection with maintaining the property. The fact that $600 was the rent being charged for another unit does not, in and of itself, demonstrate that the rent being charged Matthew was too low, or was the consequence of inappropriate "self-dealing."
Significantly, the record lacks any persuasive evidence from which the court could reasonably evaluate what the "market rate" was for the apartment at issue.
There was no other persuasive evidence of self-dealing as to other issues.
Reason of Appeal No. 8
 "8. The Glastonbury Probate Court ruled that the Fiduciaries had not breached their duty of diligence by failing to take prudent action with respect to possible environmental issues regarding the estate property located at Hebron Avenue, Glastonbury, when they had so breached that duty."
The evidence does not support this reason for appeal.
The evidence at trial indicated that the Hebron Avenue property had been the cite of a variety of businesses during the decedent's lifetime. The evidence also indicated that for the past 20 odd years, it had been rented to one Dufford, who had operated a construction and/or well-drilling business at CT Page 1833 that location. The evidence indicated that storage drums, as well as heavy equipment and an underground gasoline tank were located at the site, contributing to possible leakages and spillings. There was no evidence that the fiduciaries in any way contributed to the problem. Douglas Zajicek testified that the executors asked Dufford to eliminate the problem. Douglas Zajicek also testified that he consulted an environmental consultant, Joseph Santovassi, who indicated that the problem might simply be "dirty dirt." Richard Zajicek testified he believed the problem was caused by oil leaks from oil rigs. Mr. Santovassi advised that more extensive testing would be required to definitively determine what the problem was, at a cost of $5,000.
Preliminarily, I note appellees' view that the estate and fiduciaries might very well fall under the rubric of "innocent landowners" in this case. See Starr v. Commissioner ofEnvironmental Protection, 236 Conn. 722 (1996). The problem, whatever its parameters, had existed during decedent s life. More to the point, the evidence produced at trial failed to demonstrate that an environmental problem in fact existed of sufficient severity to require a more aggressive response. Given the circumstances, while they might have responded differently, the evidence does not support the claim that the fiduciaries breached their duty of diligence by not taking further steps — including the expenditure of significant sums of money — to investigate and remedy the alleged environmental problem.
Reasons of Appeal No. 9
 "9. The Glastonbury Probate Court ruled that the Fiduciaries had not unfairly distributed household items belong to the Decedent, when they had done so."
The evidence fails to indicate that the fiduciaries imprudently or unreasonably distributed any of decedent's household items. I agree with appellees' argument that the evidence fails to indicate that any of the items at issue were valuable antiques, or items of more than nominal economic value, although they may have had some sentimental value.
Reason of Appeal No. 12
"12. The Glastonbury Probate Court failed to require CT Page 1834 a specific appraisal of the Decedent's coin collection by date, mintmark and condition to be performed and reflected in the accounting, despite request for same."
To be sure, a detailed appraisal of the sort appellant wants might produce a more accurate appraisal of the value of the coin collection. But there is no evidence in the record to support a claim that the collection contains extremely valuable coins requiring such a detailed appraisal.
Douglas Zajicek testified that the collection consisted of many pennies and quarters — Richard Zajicek testified that more than 500 coins were involved — and that it would have been "too costly" to obtain an appraisal of each coin. He therefore obtained a less detailed appraisal from an appraiser he had known for years, who offered to purchase the collection for $4,515.99. See Plaintiff's Exhibit One; seealso Defendant's Exhibit C. Given the estate's financial condition, this decision was not unreasonable and appears to have been prudent.
The evidence on this issue falls short of demonstrating that the co-executors failed in their fiduciary duty to the estate.
Reasons of Appeal Nos. 15, 16 and 17
 "15. The Glastonbury Probate Court approved the Fiduciaries' accounting despite their failure to present their accounting in such fashion as to be reasonably and intelligently examinable by non-fiduciary beneficiaries, their counsel and the Court."
 "16. The Glastonbury Probate Court approved the Fiduciaries' accounting despite their improper lumping together without adequate explanation of many expenses under Schedule B-3 "Administration Expenses."
 "17. The Glastonbury Probate Court approved the Fiduciaries' accounting despite their failure to provide a separate detailed basis for compensation of the Fiduciaries."
CT Page 1835
The evidence does not support reasons for appeal 15, 16, and 17. I agree with appellees' argument that the expenses incurred by the fiduciaries are adequately documented in the final accounting, and are not unreasonable under the circumstances, notwithstanding the arguments set out by appellant on page 34 through 39 of his memorandum.
Given the activities they engaged in — including managing and maintaining the subject properties, engaging professionals to file necessary documents, and collecting rents for a period of approximately three years — their requests for compensation ($1,500 apiece) cannot be viewed as excessive.
Conclusion
Having considered the full record and the testimony of the witnesses at trial, I conclude that the evidence does not support any of the stated reasons for appeal. As noted above, it is possible to argue that the co-executors might have proceeded differently. But this falls short of demonstrating that they have failed to carry out their duties in a prudent manner. The evidence does not support the conclusion that the executors acted imprudently, or lacked due diligence, with regard to any of the claims made. Consequently, for the reasons stated above, this appeal is denied and Judge Hamer's May 26, 1993, orders and decrees are affirmed.
Douglas S. Lavine Judge, Superior Court
Endnotes